ORAL ARGUMENT NOT YET SCHEDULED

*Appeal No. 22-5255*

═══════════════════════════════════════

IN THE

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———— ▸▸◂◂ ————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BARRY FISCHER LAW FIRM, LLC; KESTEN DEVELOPMENT CORPORATION;
TURIST-CAMBIO VIAGENS E TURISMO LTDA;
FEDERATIVE REPUBLIC OF BRAZIL,

*Defendants-Appellees,*

*and*

ELIZABETH MACKAY, AS JOINT OFFICIAL LIQUIDATORS OF TRADE AND
COMMERCE BANK; GORDON MACRAE, AS JOINT OFFICIAL
LIQUIDATORS OF TRADE AND COMMERCE BANK,

*Defendants-Appellants.*

—————————

*On Appeal from the United States District Court
for the District of Columbia, No. 1:15-cv-00116-RBW
Before the Honorable Reggie B. Walton*

═══════════════════════════════════════

## BRIEF FOR DEFENDANTS-APPELLANTS

═══════════════════════════════════════

William T. Reid, IV
Craig A. Boneau
Scott D. Saldaña
REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy, C-300
Austin, Texas 78746
512-647-6100
wreid@reidcollins.com
cboneau@reidcollins.com
ssaldaña@reidcollins.com

Chun T. Wright
LAW OFFICE OF
   CHUN T. WRIGHT, PLLC
1775 Eye Street, NW, Suite 1150
Washington, DC 20006
202-559-4300
cwright@ctwrightlaw.com

*Attorneys for Defendants-Appellants*

═══════════════════════════════════════

## DISCLOSURE STATEMENT

Pursuant to FED. R. APP. P. 26.1(a), the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

### Interpleader Defendants-Appellants

Elizabeth Mackay
Gordon MacRae

### Persons and Entities Associated with Interpleader Defendants-Appellants

Trade and Commerce Bank – in official liquidation ("TCB") is a private, non-governmental entity that has an interest in property that is being restrained in the above-captioned matter. TCB is in liquidation, has no parent corporation, and has no stock.

The undersigned counsel of record for TCB certify that there are no parent companies, subsidiaries, or affiliates of TCB that have any outstanding securities in the hands of the public.

### Counsel for Interpleader Defendants-Appellants

REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy, Suite C-300
Austin, Texas 78746
William T. Reid, IV
Craig A. Boneau
Scott D. Saldaña

LAW OFFICE OF CHUN T. WRIGHT, PLLC
1775 Eye Street, NW, Suite 1150
Washington, DC 20006
Chun T. Wright

/s/ *Craig A. Boneau*
Craig A. Boneau
*Attorney for Interpleader Defendants-Appellants*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to FED. R. APP. P. 28(a)(1), counsel for Interpleader Defendants-Appellants certify as follows:

(A) **Parties and Amici**

Interpleader Defendants-Appellants

The Interpleader Defendants-Appellants in this matter are the Trade and Commerce Bank – in official liquidation, by and through its Joint Official Liquidators Elizabeth Mackay and Gordon MacRae.

Interpleader Plaintiff-Appellee

The Interpleader Plaintiff-Appellee is the United States of America.

*Amici*

The Interpleader Defendants-Appellants are not aware of any *amici* in this matter.

(B) **Rulings Under Review**

The ruling under review in this proceeding is the September 12, 2022 Order of the United States District Court for the District of Columbia (R.B. Walton) in Civil Action No. 1:15-cv-00116, granting the Motion to Dismiss Interpleader Action as Moot filed by Interpleader Plaintiff-Appellee. JA174.

(C) **Related Cases**

This case was previously appealed to the Second Circuit, Dkt. No. 12-4601-cv, which issued a decision on March 24, 2014. JA113. This case was later the subject of a Petition for Writ of Mandamus filed with this Court, Dkt. No. 17-5154, that was denied on May 15, 2018. Dkt. 189. There is also a related action under 28 U.S.C. § 2467 that is pending before the United States District Court for the District of Columbia (R.B. Walton), *In re: $6,871,042.36 and Accrued Interest*, Case No. 14-mc-1222 (D.D.C.). JA184.

/s/ *Craig A. Boneau*
Craig A. Boneau
*Attorney for Interpleader Defendants-Appellants*

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ....................................................... i

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ ii

TABLE OF AUTHORITIES ........................................................ v

GLOSSARY ....................................................................... ix

STATEMENT OF JURISDICTION ................................................. 1

ISSUES PRESENTED ............................................................. 1

STATEMENT OF THE CASE ...................................................... 2

STATEMENT OF FACTS .......................................................... 4

I.      DOJ Loses New Jersey Action and is Ordered to Return Funds to Kesten .... 4

II.     Instead of Returning the Venus Account Funds to Kesten, DOJ Files First
        Restraining Action ...................................................... 5

III.    TCB Obtains and Moves to Domesticate a Valid Foreign Judgment
        Against Kesten ......................................................... 7

IV.     DOJ Files Interpleader Action to Prevent the Liquidators from Executing
        on the Venus Account Funds ........................................... 9

V.      Second Circuit Remands the Interpleader Action with Specific Instructions
        ....................................................................... 12

VI.     Events Subsequent to Case Transfer ................................. 15

SUMMARY OF ARGUMENT ..................................................... 19

ARGUMENT ...................................................................... 22

I.      The District Court Erred in Ruling That the Second Circuit's Opinion and
        the Language of 28 U.S.C. § 2467 Compel Dismissal of the Interpleader
        Action as Moot. ....................................................... 22

        A.      The Second Circuit did not opine on mootness. ................. 23

B.      Nothing in 28 U.S.C. § 2467 otherwise compels a finding of mootness. ...............................................................................27

II.     The District Court Erred in Finding That "There's Nothing Currently In The Law" That Was "Definitive" To Require Denial of DOJ's Motion to Dismiss for Mootness. ....................................................32

A.      The law of interpleader is definitive that DOJ as stakeholder plaintiff should not have been permitted to obtain dismissal of the Interpleader Action during the second, "merits" stage. ......................32

B.      The law of judicial estoppel is definitive that DOJ should not have been permitted to obtain dismissal of the Interpleader Action based on arguments directly contrary to its earlier positions in the same case. ...........................................................................40

CONCLUSION ......................................................................................46

CERTIFICATE OF COMPLIANCE .......................................................48

CERTIFICATE OF SERVICE ...............................................................49

ADDENDUM

iv

# TABLE OF AUTHORITIES

## Cases

*All. for Cannabis Therapeutics v. Drug Enf't Admin.*,
  15 F.3d 1131 (D.C. Cir. 1994) ...................................................26

*Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, L.L.C.*,
  782 F.3d 186 (5th Cir. 2015) ............................................... 33, 34

*Avant Petroleum, Inc. v. Banque Paribas*,
  652 F. Supp. 542 (S.D.N.Y. 1987)...................................... 36, 42

*Avant Petroleum, Inc. v. Banque Paribas*,
  853 F.2d 140 (2d Cir. 1988)................................................ 37, 44

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
  857 F.3d 939 (D.C. Cir. 2017) ...............................................22

*Crocker v. Piedmont Aviation, Inc.*,
  49 F.3d 735 (D.C. Cir. 1995) ..................................................26

*Dist. Att'y of N.Y. Cnty. v. Republic of the Phil.*,
  307 F.Supp.3d 171 (S.D.N.Y. 2018)..................................... 31, 33, 34

*Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*,
  941 F. Supp. 2d 406 (S.D.N.Y. 2013)....................................36

*Great Am. Ins., Co. v. M & D Transp. Servs., Inc.*,
  No. 15-CV-087, 2015 WL 4038672 (S.D. Ohio June 30, 2015)........................39

*In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co.*
  *Account No. 8870792 in name of Tiger Eye Investments, Ltd.*,
  601 F. Supp. 2d 252 (D.D.C. 2009), *aff'd sub nom.*, 613 F.3d 1122
  (D.C. Cir. 2010) ....................................................... 7, 8, 43

*John Hancock Mut. Life Ins. Co. v. Beardslee*,
  216 F.2d 457 (7th Cir. 1954)...................................................45

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
  412 F.3d 418 (2d Cir. 2005)....................................................31

*Liberty Mut. Ins. Co. v. Hurricane Logistics Co.*,
  216 F.R.D. 14 (D.D.C. 2003) ................................................................39

*Mack v. Kuckenmeister*,
  619 F.3d 1010 (9th Cir. 2010) ...........................................................33

*Moses v. Howard Univ. Hosp.*,
  606 F.3d 789 (D.C. Cir. 2010) ............................................................41

*Nash & Assocs., LLC v. Gwynn*,
  No. WDQ-14-0376, 2014 WL 3428933 (D. Md. July 10, 2014) ........................35

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..........................................................................40

*NYLife Distrib., Inc. v. Adherence Grp., Inc.*,
  72 F.3d 371 (3d Cir. 1995) ................................................................41

*Research Air, Inc. v. Kempthorne*,
  589 F. Supp. 2d 1 (D.D.C. 2008) ........................................................39

*Rodriguez v. Pan Am. Health Org.*,
  502 F. Supp. 3d 200 (D.D.C. 2020) ....................................................26

*Rowland v. Calif. Men's Colony*,
  506 U.S. 194 (1993) ..........................................................................37

*Salomon Smith Barney, Inc. v. McDonnell*,
  201 F.R.D. 297 (S.D.N.Y. 2001) ........................................................33

*Savannah Bank & Tr. Co. of Savannah v. Block*,
  175 F. Supp. 798 (S.D. Ga. 1959)..................................................... 33, 34

*Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*,
  980 F.3d 109 (D.C. Cir. 2020) ............................................................22

*Texaco, Inc. v. Ponsoldt*,
  118 F.3d 1367 (9th Cir. 1997) ...........................................................44

*U.S. By & Through I.R.S. v. McDermott*,
  507 U.S. 447 (1993) ..........................................................................36

*U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*,
  274 F. Supp. 2d 10 (D.D.C. 2003) ........................................................37

*U.S. v. All Assets Held at Bank Julius Baer & Co.*,
  772 F. Supp. 2d 205 (D.D.C. 2011) ......................................................31

*U.S. v. All Right to & Int. in PNC Corp. Plaza Holdings LLC*,
  No. 20-CV-23278, 2022 WL 17653218 (S.D. Fla. Sept. 28, 2022) ....................31

*U.S. v. High Tech. Prods., Inc.*,
  497 F.3d 637 (6th Cir. 2007).......................................................... 27, 28

*U.S. v. High Tech. Prods., Inc.*,
  No. 95-72365, 2005 WL 5983560 (E.D. Mich.) (Oct. 20, 2005) ................ 27, 28

*United States v. $8,221,877.16 in U.S. Currency, et al.*,
   Case No. 00-cv-2667 (JWB) (D. N.J. filed June 2, 2000) ..................................4

*United States v. Antonio Pires De Almeida, et al.*,
  Case No. 05-mc-40 (RCL) (D.D.C. filed Jan. 25, 2005) .......................................6

*Vincent Metro, LLC v. Yah Realty, LLC*,
  1 A.3d 1026 (Conn. 2010) ....................................................................36

*Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers of Am.*,
  99 F. Supp. 597 (W.D. Pa. 1951) ................................................... 33, 34

*White v. F.D.I.C.*,
  19 F.3d 249 (5th Cir. 1994)......................................................... 44, 45

*Wolfe v. Estate of Conzen*,
  791 F. Supp. 2d 348 (S.D.N.Y. 2011).........................................................45

*Women's Equal. Action League v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990) .............................................................26

*XL Specialty Ins. Co. v. Lakian*,
  243 F. Supp. 3d 434 (S.D.N.Y. 2017).......................................................37

**Statutes**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1335(a)(1).............................................................................35

28 U.S.C. § 1654 ................................................................... 37, 39

28 U.S.C. § 2361 ........................................................................35

28 U.S.C. § 2467(c)(1) ...............................................................28

7 Fed. Prac. & Proc. Civ. § 1714 ........................................... 33, 34

**Rules**

Fed. R. App. P. 26.1(a) ............................................................... i

Fed. R. App. P. 28(a)(1) ............................................................. ii

# **GLOSSARY**

| Abbreviation | Definition |
| --- | --- |
| § 2467 | 28 U.S.C. § 2467 |
| § 2467 Enforcement Action | *In re: $6,871,042.36 and Accrued Interest*, Case No. 14-mc-1222 (D.D.C.) |
| JA | Joint Appendix |
| BVI | British Virgin Islands |
| Brazil | The Federative Republic of Brazil |
| D.C. District Court | U.S. District Court for the District of Columbia |
| DOJ | U.S. Department of Justice |
| Dkt. | District Court docket number in the Interpleader Action (unless otherwise specified) |
| First Restraining Order | Dkt. 4, *United States v. Antonio Pires De Almeida, et al.*, Case No. 05-mc-40 (D.D.C.) (JA179) |
| Kesten | Kesten Development Corporation |
| Liquidators | Elizabeth Mackay and Gordon MacRae, Joint Official Liquidators of Interpleader Defendant Trade and Commerce Bank |
| MLAT Request | Mutual Legal Assistance Treaty request under 28 U.S.C. § 2467 |
| Interpleader Action | *United States of America v. Barry Fischer Law Firm, LLC, et al.*, Case No. 1:15-cv-00116 (D.D.C.) (JA031) |
| Second Restraining Order | Dkt. 2, *In re: $6,871,042.36 and Accrued Interest*, Case No. 14-mc-1222 (D.D.C.) (JA189) |
| TCB | Interpleader Defendant Trade and Commerce Bank |
| Venus Account Funds | The $6,871,042.36 deposited by DOJ in the Court's registry in the Interpleader Action |

ix

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of New York and, later, the United States District Court for the District of Columbia had original jurisdiction over this matter pursuant to 28 U.S.C. § 1335. The interpleaded funds exceeded $500 and were deposited with the clerk of the court.

This Court has jurisdiction under 28 U.S.C. § 1291. The District Court entered final judgment in this matter on September 12, 2022. Appellants filed a timely notice of appeal on September 22, 2022. This appeal is from the final judgment of the District Court disposing of all parties' claims.

## ISSUES PRESENTED

1.     Whether the District Court erred in ruling, based on its understanding of what it described as "dicta" from the Second Circuit's earlier opinion in this case, that the law of the case doctrine renders this statutory interpleader action moot following the U.S. Department of Justice's ("**DOJ**") filing of an enforcement action under 28 U.S.C. § 2467 ("**§ 2467 Enforcement Action**"), thus precluding the District Court from determining priority to the Venus Account Funds among the interpleader defendants who have appeared and answered in this case?

2.     Whether the District Court erred in ruling that 28 U.S.C. § 2467 precludes the District Court from determining priority to the Venus Account Funds in this statutory interpleader action that DOJ itself initiated over a decade ago?

1

3.      Whether the District Court erred in granting DOJ's motion to dismiss for mootness in this statutory interpleader action after DOJ as stakeholder plaintiff had deposited the Venus Account Funds in the court registry and the case had proceeded to the merits stage of the interpleader?

4.      Whether DOJ should have been estopped from prevailing on its argument that this action is now moot after DOJ as stakeholder plaintiff initiated the statutory interpleader, deposited the Venus Account Funds into the court registry so the interpleader defendants could "litigate among themselves their claims to the funds described," and represented that this action would "provide a proper forum in which all parties' respective rights pertaining to the disputed funds could be litigated and adjudicated in a single proceeding"?

## STATEMENT OF THE CASE

This appeal concerns competing claims to the sum of $6,871,042.36, which was seized by the United States Drug Enforcement Administration (the "**DEA**") in 1999 from a bank account located in New York known as the "Venus account," held in the name of a British Virgin Islands ("**BVI**") company called Kesten Development Corp. ("**Kesten**") (the "**Venus Account Funds**").[1] After DOJ lost its

---

[1] The DEA seized funds from two bank accounts, the Venus account and a bank account held in the name of Kesten's parent company, Turist-Câmbio Viagens e Turismo, Ltda (the "**Tadeland Account Funds**"). The Venus and Tadeland Account Funds were interpleaded together ("the **Interpleaded Funds**") but only

civil forfeiture action against the Venus Account Funds in 2004, and following several intervening procedural maneuvers, DOJ commenced this action in interpleader on October 20, 2010 (the "**Interpleader Action**"), requesting that the United States District Court for the Southern District of New York resolve the competing claims to the Venus Account Funds and dismiss it from the action.

Appellants are the court-appointed Joint Official Liquidators of Trade and Commerce Bank (the "**Liquidators**" of "**TCB**"), a former Cayman Islands bank that is in liquidation proceedings in the Cayman Islands. DOJ is the Appellee. On July 23, 2021, DOJ moved to dismiss the Interpleader Action for mootness based on the issuance of a final order of forfeiture in the § 2467 Enforcement Action. In a decision stated on the record at a September 8, 2022 hearing, the District Court (Walton, J.) granted DOJ's motion to dismiss for mootness. The District Court's September 12, 2022 order granting DOJ's motion to dismiss the Interpleader Action has been stayed pending this appeal. The Liquidators filed a timely notice of appeal on September 22, 2022.

Applicable statutes are contained in an Addendum attached herein.

---

the Venus Account Funds are at issue on this appeal. A third claimant to the Interpleaded Funds agreed to settle its claims by exercising its rights against the Tadeland Account Funds and waiving any claim to the Venus Account Funds. *See* Dkt. 210-7.

## STATEMENT OF FACTS

I.    **DOJ Loses New Jersey Action and is Ordered to Return Funds to Kesten**

DOJ's first attempt to take control of the Venus Account Funds was through a civil forfeiture action filed 23 years ago. In January 1999, the DEA seized the Venus Account Funds from the New York bank account of Kesten. DOJ then brought a civil forfeiture action against the Venus Account Funds in the U.S. District Court for the District of New Jersey ("**New Jersey District Court**").[2] In those proceedings, DOJ alleged that Kesten was an alter ego of Antonio Pires de Almeida ("**Pires**"), whom they alleged controlled the seized account despite the fact that Roselie Ciolfi was Kesten's appointed representative claiming the Venus Account Funds.[3] DOJ argued that a transfer of ownership in Kesten's parent company from Pires to Ciolfi in 1994 was a "bogus sale" that was "worth little more then [sic] the paper it is written on."[4] After four years of litigation with Kesten, DOJ lost its forfeiture action on the grounds that it failed to allege probable cause that the Venus Account Funds could be properly traced to any illegal

---

[2] *United States v. $8,221,877.16 in U.S. Currency*, *et al.*, Case No. 00-cv-2667 (JWB) (D. N.J. filed June 2, 2000).

[3] Dkt. 210 at 2.

[4] *Id.* at 3.

activities.[5] Based upon DOJ's admission that Kesten was a "well-established currency exchange business in Brazil" and bank records subpoenaed by DOJ demonstrating that Kesten had "legitimate and multinational business clients" at the time the Venus Account Funds were seized, the New Jersey District Court held that Kesten and Pires were not alter egos.[6] On July 6, 2004, the New Jersey District Court ordered DOJ to return the Venus Account Funds to Kesten.[7]

## II.    Instead of Returning the Venus Account Funds to Kesten, DOJ Files First Restraining Action

DOJ moved to stay the New Jersey District Court's order pending appeal on July 14, 2004.[8] However, after a hearing in which the New Jersey District Court denied DOJ's motion to set aside the judgment, DOJ—in what has become a consistent theme in these proceedings—decided to switch tactics.[9]

On January 25, 2005, just weeks before the New Jersey District Court denied its motion to stay, DOJ filed an *ex parte* application for a restraining order in the United States District Court for the District of Columbia ("**D.C. District Court**") based upon an MLAT request from the government of Brazil ("**Brazil**")

---

[5] Dkt. 88-1 at 19–26.

[6] *Id.* at 25.

[7] Dkt. 88-2.

[8] Dkt. 210 at 3.

[9] *Id*.

in connection with a Brazilian criminal complaint filed the previous day against individuals that Brazil alleged were the "beneficial owners" of the Venus Account Funds.[10] In that *ex parte* application, DOJ represented that "[t]he true identity of the beneficial owners of the captioned funds is still being litigated in the New Jersey action," omitting any mention that the New Jersey District Court's ruling months earlier had dismissed DOJ's civil forfeiture action and ordered the Venus Account Funds returned to Kesten.[11] The next day—January 26, 2005—the D.C. District Court granted the restraining order ("**First Restraining Order**") and directed DOJ to transfer the Venus Account Funds to a seized assets account controlled by the U.S. Marshals Service, where the Venus Account Funds were to be kept until the conclusion of the Brazilian criminal proceedings initiated on January 24, 2005.[12] In granting the First Restraining Order, the D.C. District Court effectively insulated DOJ from having to comply with the New Jersey District Court's order to return the funds to Kesten. The First Restraining Order would remain in place for more than five years.[13]

---

[10] *United States v. Antonio Pires De Almeida, et al.*, Case No. 05-mc-40 (RCL) (D.D.C. filed Jan. 25, 2005) ("**First Restraining Action**").

[11] Dkt. 210 at 3–4.

[12] JA179.

[13] *See* JA182. The Brazilian criminal proceedings would not conclude until 2018. JA221.

In March 2009, in a different case involving an MLAT restraining *order*, D.C. District Court Judge John D. Bates ruled that 28 U.S.C. § 2467(d)(3) did not provide authority for DOJ to obtain a restraining order without a final foreign forfeiture *judgment*, a decision the D.C. Circuit affirmed in July 2010.[14] The *Tiger Eye* ruling led DOJ to move to vacate the First Restraining Order on August 31, 2010.[15]

## III. TCB Obtains and Moves to Domesticate a Valid Foreign Judgment Against Kesten

TCB, formerly a Cayman Islands bank, was the victim of an $800 million fraud perpetrated by its principals, the Peiranos, that resulted in its liquidation in the Cayman Islands in 2002.[16] In the twenty-one years since that liquidation, TCB's court-appointed Liquidators have been attempting to recover the funds stolen from TCB and return them to the victims of the Peiranos' fraud—TCB's account holders and creditors.[17] Through those efforts, the Liquidators uncovered various third parties that laundered the funds stolen from TCB. Kesten was one of

---

[14] *In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Account No. 8870792 in name of Tiger Eye Investments, Ltd.* ("**Tiger Eye**"), 601 F. Supp. 2d 252, 253 (D.D.C. 2009), *aff'd sub nom.*, 613 F.3d 1122, 1130 (D.C. Cir. 2010).

[15] JA178.

[16] Dkt. 210 at 4.

[17] *Id.*

those third parties.[18] Approximately $16 million of funds from TCB and its customers were deposited into Kesten's account at MTB Bank as part of the fraud.[19]

After discovering the connection between the fraud and Kesten, an entity organized under the laws of the BVI, on June 29, 2010, TCB moved to intervene in the First Restraining Action so that TCB could seek to dissolve the First Restraining Order.[20] TCB based its motion to intervene on the District Court's reasoning set forth in *Tiger Eye* that the Venus Account Funds were still not subject to any final Brazilian forfeiture judgment.[21] Prior to a ruling on TCB's motion to intervene, as discussed above, DOJ itself moved to vacate the First Restraining Order on August 31, 2010, citing the *Tiger Eye* decision.[22]

While seeking to intervene in the First Restraining Action, the Liquidators brought suit in the BVI, Kesten's place of incorporation, against Kesten on the basis of Kesten's knowing and unconscionable receipt of funds stolen from TCB.[23] On September 15, 2010, after Kesten failed to appear in the proceeding, the

---

[18] *Id.* at 4–5.

[19] *Id.* at 5.

[20] *Id.*

[21] *Id.*

[22] JA178.

[23] Dkt. 210-3.

Eastern Caribbean Supreme High Court of Justice British Virgin Islands Division ordered Kesten to pay the Liquidators restitution in the amount of $15,936,369 ("**BVI Judgment**").[24]

After obtaining the BVI Judgment, the Liquidators domesticated it in the United States Bankruptcy Court for the Southern District of New York ("**S.D.N.Y. Bankruptcy Court**"), Case No. 05-60279 SMB (filed on September 16, 2010, prior to the Interpleader Action), where TCB already had an ongoing Chapter 15 bankruptcy proceeding.[25] Kesten likewise failed to appear in the S.D.N.Y. Bankruptcy Court proceeding and, therefore, on October 26, 2010, TCB was granted another judgment against Kesten for $15.9 million based on the S.D.N.Y. Bankruptcy Court's recognition and enforcement of the BVI Judgment **("S.D.N.Y. Domesticated Judgment**").[26]

## IV.    DOJ Files Interpleader Action to Prevent the Liquidators from Executing on the Venus Account Funds

By the time the First Restraining Order was vacated, DOJ knew that the Liquidators sought to satisfy their judgment against Kesten through the Venus Account Funds, which the New Jersey District Court had ordered to be returned to Kesten in 2004. Without a restraining order in place, no practical barrier remained

---

[24] Dkt. 210-4.

[25] Dkt. 210-5.

[26] Dkt. 210-6.

to prevent TCB from executing on the Venus Account Funds with a domesticated judgment.

Faced with that possibility, DOJ again switched tactics and initiated this Interpleader Action in the District Court for the Southern District of New York ("**New York District Court**") on October 20, 2010, only six days before the S.D.N.Y. Domesticated Judgment was issued to the Liquidators.[27] DOJ named several adverse claimants to the Venus Account Funds as defendants, including the Liquidators and Brazil.[28] In its Complaint in Interpleader, DOJ stated that it could not "determine which of the Defendants in Interpleader are entitled to the funds," but that by depositing the Venus Account Funds in the court registry on October 21, 2010, it agreed "to abide by the judgment of this Court."[29] DOJ acknowledged in its prayer for relief that it sought "judgment against Defendants in Interpleader," such that (1) "the Defendants in Interpleader and each of them be required to interplead and litigate among themselves their claims to the funds described," (2) "the Court determine and enter an order setting forth the proper recipients of the seized funds," (3) "that the United States be dismissed from this action without prejudice following payment of the proceeds into the registry of the

---

[27] JA031.

[28] JA038.

[29] JA039.

Court," and (4) any other "just and equitable" relief.[30] Based on DOJ's representations, the New York District Court determined in February 2012 that DOJ satisfied the statutory requirements of 28 U.S.C. § 1335.[31]

DOJ served Brazil in the Interpleader Action via letters rogatory.[32] Brazil appeared through counsel in the Interpleader Action and filed a motion to dismiss based on the doctrines of international comity and *forum non conveniens*.[33] The New York District Court denied Brazil's motion to dismiss on February 23, 2012, declining to dismiss the Interpleader Action under the doctrine of comity based on a finding that this case did not parallel the Brazilian criminal proceedings because the Liquidators were not parties to those proceedings and, as Brazil conceded, were not eligible to be joined or otherwise participate under Brazilian law.[34] The New York District Court also rejected Brazil's *forum non conveniens* challenge, concluding that the Interpleader Action "need[ed] to remain" before it so that the claims of the interpleader defendants, including Brazil and the Liquidators, "can all

---

[30] JA039–40.

[31] *See* JA072–73. That court, however, denied Brazil's request to dismiss DOJ based upon the "unusual circumstance" of Brazil also requesting that DOJ "file a Statement of Interest in the case pursuant to 28 U.S.C. § 517." JA073. The New York District Court astutely observed that "Interpleader plaintiffs do not often state a preference for one claimant over another." *Id.*

[32] JA004–05.

[33] JA005.

[34] JA070.

be dealt with in an appropriate manner."[35] After its motion to dismiss was denied, Brazil filed an answer in the Interpleader Action on April 5, 2012.[36]

Later in 2012, the parties moved for summary judgment. The Liquidators argued that Brazil could not prevail on summary judgment because enforcement of Brazil's criminal forfeiture order would violate the penal law rule that bars United States courts from enforcing the penal laws of foreign countries. The New York District Court nonetheless granted Brazil's motion for summary judgment, concluding that the penal law rule was inapplicable because, "[a]fter all, [DOJ] brought this interpleader claim."[37] The New York District Court's ruling was stayed pending appeal to the Second Circuit.[38]

## V.    Second Circuit Remands the Interpleader Action with Specific Instructions

The Liquidators appealed the New York District Court's grant of summary judgment and rejection of their penal law rule argument. In an opinion issued March 24, 2014, the Second Circuit resoundingly agreed with the Liquidators, rejecting the New York District Court's reasoning for granting summary judgment and concluded that "the penal law rule applies to Brazil's efforts to seek United

---

[35] JA072.

[36] JA082.

[37] JA112.

[38] JA012.

States enforcement of its forfeiture judgment by transferring the funds at issue from the United States to Brazil."[39] The Second Circuit held that Brazil could not assert a valid claim in the Interpleader Action without first applying to DOJ to enforce a final forfeiture judgment pursuant to the requirements of 28 U.S.C. § 2467.[40] "Accordingly, while we conclude that the penal law rule requires vacatur of summary judgment in favor of Brazil, we remand the case to the district court with instructions that it afford Brazil and the Attorney General a reasonable period of time to satisfy § 2467's exception to that rule before reaching a final decision in the interpleader action."[41]

The Second Circuit went on to expressly reserve for the District Court the question of "*the priority of the Brazilian Judgment as compared to the British Virgin Islands default judgment procured by the Liquidators*."[42] (Emphasis added). The Second Circuit therefore remanded the case to the New York District Court with "instructions that it afford Brazil a reasonable period of time to request

_____

[39] JA133.

[40] JA133–34 ("Indeed, to construe the United States' commencement of this interpleader action as Brazil urges would be to sanction bypassing the procedure set forth in 28 U.S.C. § 2467, which, as we explain below, is a statutory exception to the penal law rule created by Congress for enforcing foreign forfeiture judgments.").

[41] JA116–17.

[42] JA138.

and the Attorney General a reasonable period of time to file a § 2467 enforcement action."[43]

On remand, Judge Katherine B. Forrest of the New York District Court (presiding over the case after it was re-assigned) afforded Brazil and DOJ repeated extensions to satisfy the Second Circuit's mandate.[44] Sensing that the New York District Court's patience was wearing thin, Brazil and DOJ notified Judge Forrest on November 4, 2014, that an *ex parte* application had been filed with the D.C. District Court for a § 2467(d)(3) restraining order (the "**§ 2467 Enforcement Action**").[45] On December 18, 2014, the D.C. District Court granted DOJ's application and entered a restraining order that essentially "enjoined and

---

[43] JA137.

[44] *See* Dkt. 114 (setting June 2, 2014 deadline for Brazil to file § 2467 application); JA141 (observing that the Court had allowed the "reasonable period of time" required by the Second Circuit for filing a § 2467 enforcement action, and requiring that "[a]ny enforcement action must be filed not later than November 3, 2014"); Dkt. 128 ("But for the World Cup, I would deny this additional request.").

[45] *See* Dkt. 139; Dkt. 140. DOJ's decision to file the *ex parte* application in the D.C. District Court rather than in the New York District Court was directly contrary to DOJ's representation at an April 12, 2012 hearing before the New York District Court, that any attempt by DOJ to "seek the restraint of those assets in an application before a district judge which, if we decide to do that option, would be before your Honor, as opposed to doing it elsewhere." Dkt. 99 at 10:12–15. DOJ later explained that it instead chose to seek the Second Restraining Order in the D.C. District Court "for selfish reasons, because we are located in Washington, D.C., those of us who have to execute it, and the central authority, the people who receive the requests are located down the block, which is very convenient." Dkt. 152 at 13:7–10.

restrained" Judge Forrest from proceeding with the Interpleader Action "without prior approval of this Court, notice to the United States, and an opportunity for the United States to be heard, except as specified in any future orders entered by this Court."[46] Judge Forrest then transferred the Interpleader Action to the D.C. District Court on January 14, 2015.[47]

## VI.  Events Subsequent to Case Transfer

Following the transfer, the D.C. District Court stayed the Interpleader Action pending resolution of the § 2467 Enforcement Action pursuant to an order dated February 18, 2015.[48] On March 9, 2015, the Liquidators moved to intervene in the § 2467 Enforcement Action, seeking to dissolve the restraining order entered in that case.[49] In a November 8, 2016 opinion, the District Court granted the Liquidators' motion to intervene as of right but denied the motion to dissolve the restraining order.[50] In that same opinion, the District Court also denied the Liquidators' motion for a post-restraint hearing in the § 2467 Enforcement Action because the "parallel interpleader action" would provide the Liquidators "an opportunity to be heard," and held that "it would be inappropriate to litigate the

---

[46] JA224.

[47] JA143.

[48] JA148.

[49] JA196.

[50] JA197.

competing claims to the Venus Account funds within the context of the current § 2467 enforcement action" because "[t]he ownership of the Venus Account Funds is the precise issue to be resolved in the parallel interpleader action."[51]

On June 29, 2017, the Liquidators filed a Petition for Writ of Mandamus with this Court, arguing that the District Court's indefinite stay of the interpleader action violated the Second Circuit's mandate. On May 15, 2018, the Petition for Writ of Mandamus was denied.[52] On September 26, 2018, DOJ filed an application in the § 2467 Enforcement Action for the District Court to enter an order to register and enforce the now-final Brazilian criminal judgment.[53] On November 15, 2018, the District Court filed an order to show cause in the Interpleader Action directing any interpleader defendants who had not intervened in the § 2467 Enforcement Action to show cause on or before November 29, 2018, as to why DOJ's application should not be granted.[54]

Even though it was not subject to the November 15, 2018 order to show cause, DOJ nonetheless filed a "response" in the Interpleader Action on December 4, 2018, "suggesting that the current Interpleader action is moot"

---

[51] JA211, JA217.

[52] Dkt. 189.

[53] JA185.

[54] Dkt. 192 at 4.

following DOJ's September 26, 2018 filing of its application to register and enforce the Brazilian criminal judgment in the § 2467 Enforcement Action, because "all claims to be adjudicated in the United States must be adjudicated in the companion § 2467 action following the dictate of the Court of Appeals for the Second Circuit and consistent with the statute."[55] By its response, DOJ requested that the District Court dismiss the Interpleader Action as moot.[56] The next day, the Liquidators filed a request for clarification with the District Court seeking guidance as to whether the Liquidators would need to respond to DOJ's "response" as though it were a motion, pointing out that DOJ had requested dismissal of the Interpleader Action as moot without citing the procedural basis for such relief or attaching the proposed order required to support a motion under Local Civil Rule 7(c).[57] On December 7, 2018, the District Court denied DOJ's motion for dismissal of the Interpleader Action without prejudice as procedurally deficient, noting further that "it would be inappropriate to address the United States' motion to dismiss this interpleader action at this time given the threshold determination

---

[55] Dkt. 197 at 1.

[56] *Id.* at 5.

[57] Dkt. 198.

that must be made in the § 2467 enforcement action of whether the Court shall grant the United States' Application."[58]

DOJ's application to register and enforce the Brazilian criminal judgment in the § 2467 Enforcement Action was granted on March 31, 2021.[59] On April 19, 2021, DOJ moved for entry of a Final Order of Forfeiture against the Venus Account Funds in the § 2467 Enforcement Action based upon the "enforcement and registration of a February 17, 2012 final forfeiture judgment issued by the 6th Federal Criminal Court of the Judiciary Section of São Paulo."[60] On June 25, 2021, the District Court granted the Final Order of Forfeiture in the § 2467 Enforcement Action, but stayed its order pending resolution of the Interpleader Action.[61] That same day, the District Court lifted the stay of the Interpleader Action.[62]

On July 23, 2021, DOJ filed a motion to dismiss the Interpleader Action as moot.[63] That same day, the Liquidators filed a motion for summary judgment in the Interpleader Action.[64] On August 6, 2021, DOJ filed an opposition to the

---

[58] Dkt. 199 at 3.

[59] JA219.

[60] JA187; Dkt. 210 at 10.

[61] JA234.

[62] Dkt. 205.

[63] JA161.

[64] Dkt. 210.

Liquidators' motion for summary judgment and a cross-motion for summary judgment.[65] After full briefing on the summary judgment motion and cross-motion, the District Court denied both without prejudice, explaining that it would consider reinstatement of the summary judgment motion and cross-motion in the event it denied DOJ's motion to dismiss for mootness.[66] In a September 12, 2022 order, the District Court granted DOJ's motion to dismiss for mootness "[i]n accordance with the oral rulings issued by the Court at the motion hearing held on September 9, 2022, via teleconference," but stayed its order pending the filing of a notice of appeal "on or before September 23, 2022."[67] The Liquidators timely filed a notice of appeal on September 22, 2022.[68]

## **SUMMARY OF ARGUMENT**

DOJ initiated this case more than a decade ago, arguing that the Interpleader Action would "provide a proper forum in which all parties' respective rights pertaining to the disputed funds could be litigated and adjudicated in a single proceeding."[69] DOJ deposited the Venus Account Funds into the court registry and agreed to abide by the District Court's judgment as to entitlement to the funds

---

[65] Dkt. 211.

[66] JA173.

[67] JA174.

[68] JA029.

[69] Dkt. 25 at 8.

among various adverse claimants, including the Liquidators. The case has been repeatedly put on hold for years to allow interpleader defendant Brazil to obtain a judgment that is enforceable in U.S. courts. After Brazil finally obtained that domesticated judgment and the Interpleader Action was ready to proceed to a decision on the merits, DOJ now argues that the Interpleader Action was mooted by the very filing of the § 2467 Enforcement Action that allowed Brazil to domesticate its foreign criminal forfeiture judgment consistent with the Second Circuit's opinion in this case. Realizing that its preferred claimant Brazil could not prevail in the Interpleader Action, DOJ effectively asked the District Court for the money back so DOJ could award it to Brazil. The District Court complied, and that was in error.

Contrary to DOJ's arguments to the District Court, the Second Circuit did not rule that the filing of the § 2467 Enforcement Action would moot the Interpleader Action. In fact, the Second Circuit did precisely the opposite. Because the Second Circuit did not decide that the filing of the § 2467 Enforcement Action would moot the Interpleader Action, the District Court erred in adopting DOJ's argument under the law of the case doctrine. Further, findings that are not essential to a court's holding—*i.e.*, dicta—are not part of the law of the case. The District Court itself characterized the portion of the Second Circuit's opinion upon which it relied as "dicta." As the Second Circuit did not affirmatively decide that the

Interpleader Action would be mooted by a § 2467 final forfeiture order, the law of the case doctrine was not a proper basis for dismissal by the District Court.

Additionally, there is nothing in 28 U.S.C. § 2467 that "forecloses a U.S. court from assessing who is entitled to the funds" in the context of the Interpleader Action, as the District Court held here. The District Court's ruling contravenes existing case law on point. Moreover, nothing in § 2467 or its legislative history indicates that a domesticated foreign criminal forfeiture judgment cannot be considered as part of an interpleader action, let alone that a domesticated foreign criminal judgment trumps a competing domesticated foreign civil judgment and moots any such claims. Further, any concerns over comity are at a minimum here because the United States is plaintiff and Brazil litigated the Interpleader Action for years without issue.

The District Court also erred in holding that there was an absence of authority that definitively required denial of DOJ's motion to dismiss the Interpleader Action as moot. Given DOJ's status as stakeholder plaintiff and the Interpleader Action's procedural posture, the District Court erred under applicable interpleader law by granting DOJ's motion to dismiss during the second, "merits" stage of the Interpleader Action. Also, because DOJ itself initiated the Interpleader Action, DOJ should have been judicially estopped from prevailing on the argument that the Interpleader Action is moot. For all these reasons and as set forth more

fully below, the Court should reverse and remand so this Interpleader Action may at long last proceed to the merits.

## ARGUMENT

I.   **The District Court Erred in Ruling That the Second Circuit's Opinion and the Language of 28 U.S.C. § 2467 Compel Dismissal of the Interpleader Action as Moot.**

In granting DOJ's motion to dismiss for mootness, the District Court held "that the best reading of the statute consistent with what the Second Circuit said on the issue is the government's position."[70] As set forth below, the District Court erred in relying on DOJ's mischaracterization of the Second Circuit's opinion in this case to find that U.S. courts are "foreclose[d]" from assessing the parties' entitlement to the Venus Account Funds based on DOJ's filing of the § 2467 Enforcement Action. The Second Circuit's opinion contemplated a decision on the merits in the Interpleader Action, and the court expressly declined to opine as to the relative priority of the Liquidators' claim versus Brazil's. Moreover, nothing in § 2467 otherwise compels a finding that the Interpleader Action is moot. Whatever the procedural basis for the District Court's dismissal, this Court reviews that decision *de novo*.[71]

_____

[70] Dkt. 222 at 15:11–13.

[71] *See Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*, 980 F.3d 109, 114 (D.C. Cir. 2020); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 944 (D.C. Cir. 2017).

### A.    The Second Circuit did not opine on mootness.

In arguing the mootness of the Interpleader Action to the District Court, DOJ mischaracterized the Second Circuit's opinion as supportive of its legal position.[72] But contrary to DOJ's assertions to the District Court, the Second Circuit did not hold that the § 2467 Enforcement Action was the "exclusive setting" to determine entitlement to the Venus Account Funds, let alone that the filing of the parallel § 2467 Enforcement Action would moot this Interpleader Action.[73] DOJ's reading hinges entirely on a sentence following the Second Circuit's instruction that the Southern District of New York afford Brazil a reasonable time to initiate a § 2467 action: "[i]f Brazil fails, or if the Attorney General declines, to do so, the district court shall then determine, in light of our decision today, whether any interpleader party is entitled to the funds seized from the Venus Account."[74] But the only way to support DOJ's reading is to insert the word "only" before each "if"—a word that is not only absent, but that would be inconsistent with the Second Circuit's other findings. Read in context, this sentence merely notes that, absent a § 2467 enforcement action, the penal law rule would prevent Brazil from arguing its

---

[72] JA161.

[73] *See id.*

[74] JA137–38.

entitlement to the Venus Account Funds and would require the trial court to determine entitlement between any remaining interpleader defendants.

Indeed, the District Court's ruling ignores the remainder of the Second Circuit's opinion that completely undermines DOJ's argument. The Second Circuit did not affirmatively decide that the filing of the § 2467 Enforcement Action would moot the Interpleader Action. In fact, the Second Circuit did precisely the opposite. In summarizing its holding at the very beginning of the opinion, the Second Circuit stated:

> [W]hile we conclude that the penal law rule requires vacatur of summary judgment in favor of Brazil, we remand this case to the district court with the instructions that it afford Brazil and the Attorney General a reasonable period of time to satisfy § 2467's exception to that rule before reaching a final decision in this interpleader action.[75]

The inclusion of the phrase "before reaching a final decision in this interpleader action" presumes that even if Brazil satisfied § 2467, the District Court would still need to make a final decision in the Interpleader Action. In keeping with that holding, the Second Circuit went on to conclude that, "as a matter of law, [] the penal law rule did not permit the district court to grant summary judgment [in the

---

[75] JA116–17.

Interpleader Action] in favor of Brazil based on a criminal forfeiture judgment in the absence of a § 2467 petition by the Attorney General."[76]

Allaying any doubts as to its intent, the Second Circuit held "it unnecessary [] to decide" in its ruling "(1) whether the Liquidators are collaterally estopped from asserting an interest in the Venus Account by virtue of the forfeiture determination in the Brazilian Judgment, and (2) the priority of the Brazilian Judgment as compared to the British Virgin Islands default judgment procured by the Liquidators."[77] Had its holding contained the mootness ruling upon which DOJ and the District Court rely, such a determination would have been inherent in the Second Circuit's ruling. Further, the Second Circuit specifically directed that "nothing in this opinion should be construed to limit the parties on remand from pursuing these matters and any others that may be relevant."[78]

Because the Second Circuit did not decide that the filing of the § 2467 Enforcement Action would moot the Interpleader Action, the District Court erred in adopting DOJ's argument under the law of the case doctrine.[79] Under the law of the case doctrine, generally, "a court involved in later phases of a lawsuit should

---

[76] JA124.

[77] JA138.

[78] *Id*.

[79] JA167.

not re-open questions decided . . . by that court or a higher one in earlier phases."[80] But "[q]uestions that merely could have been decided do not become law of the case."[81] Thus, where, as here, an appellate court declines to decide an issue and remands to the district court on other grounds, the law of the case doctrine does not apply.[82] Moreover, findings that are not essential to a court's holding—*i.e.*, dicta—are not part of the law of the case.[83] Here, the District Court itself characterized the portion of the Second Circuit's opinion upon which the District Court was relying as "dicta."[84] Because the Second Circuit did not affirmatively decide that the Interpleader Action would be mooted by the filing of the § 2467 Enforcement Action, the law of the case doctrine was not a proper basis for dismissal by the District Court.

---

[80] *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) (holding that "[w]hat identifies this as true law-of-the-case preclusion is that the first appeals court has affirmatively decided the issue, be it explicitly or by necessary implication").

[81] *Women's Equal. Action League v. Cavazos*, 906 F.2d 742, 751 n.14 (D.C. Cir. 1990) (quotations and citations omitted).

[82] *See All. for Cannabis Therapeutics v. Drug Enf't Admin.*, 15 F.3d 1131, 1135 (D.C. Cir. 1994) ("While Alliance and NORML had apparently raised these issues in *ACT*, we did not expressly address them; nor did we decide them by necessary implication because our limited remand in *ACT* could have reflected a decision to postpone consideration of these remaining arguments. Accordingly, we conclude that *ACT* did not establish the law of the case as to these issues.").

[83] *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 235 (D.D.C. 2020) ("Dicta is not part of the law of the case." (citations and quotations omitted)).

[84] JA174 n.1; Dkt. 222 at 15:9.

**B.      Nothing in 28 U.S.C. § 2467 otherwise compels a finding of mootness.**

There is nothing in 28 U.S.C. § 2467 that "forecloses a U.S. court from assessing who is entitled to the funds" in the context of the Interpleader Action, as the District Court held here.[85] The District Court's ruling contravenes existing case law on point, despite the District Court's claim that none exists. In *United States v. High Tech. Prods., Inc.*, the Sixth Circuit addressed an interpleader action where the United States faced competing claims from Russia, Canada, and two corporations to certain non-radioactive isotopes that had been seized by the U.S. Customs Service.[86] Canada's claim in that case was based upon an MLAT request to the United States.[87]

In advising the court in that case as to the impact of Canada's MLAT request on the interpleader action, DOJ acknowledged "that the Court can impose 'whatever terms and conditions that it finds necessary' in dealing with the request of Canada under the MLAT," including requiring "the Canadian authorities to assent to terms and conditions as may be required to protect interests of third

---

[85] Dkt. 222 at 15:25–16:8.

[86] 497 F.3d 637 (6th Cir. 2007).

[87] Supplemental Report and Recommendation of Special Master, *U.S. v. High Tech. Prods., Inc.*, No. 95-72365, 2005 WL 5983560, at 3 (E.D. Mich.) (Oct. 20, 2005).

parties in the item being transferred."[88] The Sixth Circuit confirmed that the United States had properly invoked interpleader, even where one claimant's interest in the subject property was invoked pursuant to a valid MLAT request.[89]

In the absence of case law supporting DOJ's position that was adopted by the District Court, DOJ's motion to dismiss invoked the legislative history of § 2467 to advance its mootness argument.[90] But nothing in § 2467 or its legislative history indicates that a foreign forfeiture judgment cannot be considered as part of an interpleader action, let alone that a foreign judgment trumps a competing domestic judgment and moots any such claims. In fact, § 2467(c)(1) confirms that the Attorney General may seek "to enforce the foreign forfeiture or confiscation judgment *as if the judgment had been entered by a court in the United States*."[91] Thus, the effect of the § 2467 Enforcement Action was to provide Brazil with a judgment on par with the Liquidators' default judgment. And because the entire

---

[88] *Id.* at 5.

[89] *High Tech. Prods., Inc.*, 497 F.3d at 642 ("Facing these competing claims, the United States wisely elected to file an interpleader action so that the court could authoritatively decide how the isotopes were to be distributed. Because ownership of the isotopes was disputed, distribution of the isotopes was the issue to be decided in the interpleader action, and the United States was therefore entitled, as a matter of course as part of the interpleader action, to be discharged of all liability related to distribution of the isotopes.").

[90] JA168.

[91] 28 U.S.C. § 2467(c)(1) (emphasis added).

purpose of an interpleader proceeding is to adjudicate a situation in which there may be competing claims or judgments for the same set of funds, the Liquidators' and Brazil's competing claims to the Venus Account Funds based on their respective judgments can and should be adjudicated in this case.

DOJ's argument adopted by the District Court—that U.S. courts are foreclosed from adjudicating entitlement to the subject funds—is contrary to positions taken earlier in this litigation by Brazil, the District Court, and DOJ.[92] Brazil has admitted that the São Paulo Court's confiscation order recognizes that "the United States judiciary may choose to rule on 'any potential good faith' claims to the funds . . . before they are remitted to the Brazilian Court through the mechanisms of international judicial cooperation."[93] In opposing the Liquidators' motion to dismiss the Interpleader Action in 2010, DOJ argued that "the pending interpleader action in this Court will provide a proper forum in which all parties' respective rights pertaining to the disputed funds could be litigated and adjudicated in a single proceeding."[94] Similarly, the District Court had previously observed that whether to grant the § 2467 petition and how to resolve competing claims over the right to the Venus Account Funds were two separate issues, with the "ownership of

---

[92] Dkt. 222 at 15:25–16:8.

[93] Dkt. 76 ¶ 35.

[94] Dkt. 25 at 8.

the Venus Account Funds" being "the precise issue to be resolved in the parallel interpleader action," such that "it would be inappropriate to litigate the competing claims to the Venus Account funds within the context of the current § 2467 enforcement action."[95]

With respect to § 2467's legislative history, the Liquidators acknowledge that it indicates a concern with an individual "raising objections to the basis for the forfeiture in the Federal court that he also raised, or is entitled to raise, in the foreign court," but Liquidators disagree with DOJ's assertion that such a concern precludes resolution of the Interpleader Action on its merits.[96] The Liquidators have not and will not raise objections to the basis for the forfeiture in the Interpleader Action that could have been raised in Brazil.[97] *The only issue to be decided by the District Court upon remand is whether the Liquidators' first in time default judgment takes precedence over Brazil's later-acquired foreign forfeiture order, now enforceable by virtue of § 2467*. Resolving the Interpleader Action on its merits would not, therefore, add to the "duplicative litigation" Congress sought to eliminate with § 2467.

---

[95] JA211.

[96] *See* JA168 (citing H.R. Report No. 107-250(I), at Sec. 118).

[97] Thus, while the Liquidators dispute that they could have intervened in the Brazilian criminal proceedings (a point Brazil previously conceded, *see* JA070), such a determination is nonetheless irrelevant as the Liquidators are not contesting the grounds for the forfeiture in this action.

Finally, any concerns over comity are minimal here. International comity is "not an imperative obligation of courts but rather is a discretionary rule of 'practice, convenience, and expediency.'"[98] Comity concerns are diminished where, as here, a sovereign has already appeared and litigated for years in U.S. court.[99] Further, where the Executive Branch has already balanced "the proper role of comity concerns" in "deciding to bring the case in the first place," courts should not second guess that judgment.[100] Because the United States filed the Interpleader Action and served letters rogatory on Brazil, comity concerns are at their lowest ebb.[101]

---

[98] *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005).

[99] *See Dist. Att'y of N.Y. Cnty. v. Republic of the Phil.*, 307 F.Supp.3d 171, 220 (S.D.N.Y. 2018) (holding in interpleader action that newly raised comity concerns "fall flat" when a sovereign-state litigant has prosecuted a case "for years" without objecting to it on international comity grounds, because "[d]ismissing the case at this late stage would cause undue prejudice to the other claimants that have diligently pursued their claims since 2014").

[100] *United States v. All Right to & Int. in PNC Corp. Plaza Holdings LLC*, No. 20-CV-23278, 2022 WL 17653218, at *11 (S.D. Fla. Sept. 28, 2022).

[101] *Id.* ("As phrased by the United States, it is 'difficult to conceive of any instance in which it would be appropriate for a court to abstain under principles of international comity when the United States is a plaintiff.'"); *see also United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 205, 210 n.3 (D.D.C. 2011) (noting that "[a] case in which the United States is the plaintiff would seem a particularly unsuitable candidate for abstention on international comity grounds").

## II.    The District Court Erred in Finding That "There's Nothing Currently In The Law" That Was "Definitive" To Require Denial of DOJ's Motion to Dismiss for Mootness.

The District Court additionally erred in holding that there was an absence of authority that definitively required denial of DOJ's motion to dismiss the Interpleader Action as moot. DOJ's motion to dismiss contravened black-letter interpleader law that precludes a stakeholder plaintiff from obtaining dismissal of an interpleader action during the second, "merits" stage of the litigation. DOJ unusually sought dismissal of the Interpleader Action it filed because it understood that Brazil could not prevail in an adjudication on the merits. Further, because DOJ itself initiated the Interpleader Action, DOJ should have been judicially estopped from prevailing on the argument that the Interpleader Action is moot.

### A.    The law of interpleader is definitive that DOJ as stakeholder plaintiff should not have been permitted to obtain dismissal of the Interpleader Action during the second, "merits" stage.

The District Court erred in granting DOJ's motion to dismiss given DOJ's status as stakeholder plaintiff and the Interpleader Action's procedural posture. Interpleader actions typically proceed in two stages. The two-stage design of interpleader is intended to conserve the resources of the stakeholder plaintiff by prohibiting litigation over the merits of competing claims during the first stage,

before the plaintiff is discharged.[102] In the first stage, the district court determines whether the requirements of § 1335 are met before relieving "the plaintiff stakeholder from liability."[103] During that first interpleader stage, the plaintiff stakeholder can still seek dismissal under Federal Rule of Civil Procedure 41(a)(2).[104] Here, it is undisputed that the New York District Court

---

[102] *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (rejecting litigation on merits of claims during first stage because it "would defeat the resource-conservation purposes of interpleader," and the "purpose of interpleader is for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund,'" which "includes limiting litigation expenses, which is not dependent on the merits of adverse claims, only their existence.").

[103] *Dist. Att'y of N.Y. Cnty.*, 307 F.Supp.3d at 189; *Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297, 301 (S.D.N.Y. 2001) (same); *see also Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 193 (5th Cir. 2015) ("In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund."); *Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers of Am.*, 99 F. Supp. 597, 600 (W.D. Pa. 1951) ("Interpleader actions involve two successive litigations. The first phase is between the plaintiff and the claimants as to whether the claimants shall interplead. After a hearing on the bill and answers the court may grant or deny the interpleader."), *aff'd*, 194 F.2d 770 (3d Cir. 1952); *Savannah Bank & Tr. Co. of Savannah v. Block*, 175 F. Supp. 798, 801 (S.D. Ga. 1959) ("[I]nterpleader actions are conducted in two stages. In the first, the court must determine whether the plaintiff is entitled to interplead which is a decision for the court.").

[104] 7 FED. PRAC. & PROC. CIV. § 1714; *see also Westinghouse Elec. Corp.*, 99 F. Supp. at 600 (holding dismissal of interpleader action without prejudice on plaintiff's motion was not precluded where the case was in the first interpleader stage and no decree of interpleader had yet been entered because it is "[o]nly in the second phase when the decree of interpleader has been entered and all of the

---

33

completed the first interpleader stage over ten years ago in February 2012 when it ruled, based on DOJ's representations as stakeholder plaintiff, that the statutory requirements of 28 U.S.C. § 1335 had been satisfied.[105]

The second, "merits" stage of interpleader "requires the Court to adjudicate the parties' adverse claims on the merits."[106] In the second interpleader stage, litigation occurs between the defendants as adverse claimants to the interpleaded funds.[107] Here, the Liquidators and Brazil both moved for summary judgment in 2012 during the second interpleader stage.[108] The New York District Court granted Brazil's summary judgment motion on October 24, 2012, an order that the Second

---

money involved . . . paid into court [that] money judgments [may] be obtained by proof of allegations in the nature of a counterclaim").

[105] JA072–73.

[106] *Dist. Att'y of N.Y. Cnty.*, 307 F.Supp.3d at 189; *see also Auto Parts Mfg. Miss., Inc.*, 782 F.3d at 193 ("If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants.").

[107] *Westinghouse Elec. Corp.*, 99 F. Supp. at 600 ("The second phase follows a decree of interpleader and is between the adverse claimants to the fund on the merits after they have interpleaded their respective claims to the money secured by bond or paid into court."); *Block*, 175 F. Supp. at 801 (holding that "[i]f this [first] phase of the case is decided favorably to the plaintiff," stakeholder plaintiff "should be discharged and the claimants to the fund left to try out their competitive claims before a jury"); 7 Fed. Prac. & Proc. Civ. § 1714 n.16 (during second interpleader stage, "each defendant occupies the position of a plaintiff and must state [their] own claim and answer that of another").

[108] JA009–10.

Circuit ultimately reversed in 2014.[109] Following remand, the Interpleader Action has remained in the same procedural posture in the second interpleader stage for nearly nine years, during which the Liquidators have diligently pursued their rights.

Unlike during the first stage, a plaintiff stakeholder cannot seek dismissal of an interpleader during the second stage because, after finding the interpleader proper based on the existence of competing claims during the first stage of the litigation, a district court retains jurisdiction over the interpleaded funds through their final disposition.[110] Even in cases where parties have consensually sought to "moot" interpleader actions—typically when one claimant relinquishes claims to the funds such that "there are no longer competing claims to the disputed funds"— the court that held the interpleaded funds *in custodia legis* still retained jurisdiction to dispose of them.[111] Indeed, DOJ previously argued that exact same position in

---

[109] JA099; JA113.

[110] 28 U.S.C. § 1335(a)(1) (conferring jurisdiction on a district court so long as the claimants "may claim to be entitled to such money or property . . . arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation"); *see also* 28 U.S.C. § 2361 ("Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.").

[111] *See Nash & Assocs., LLC v. Gwynn*, No. WDQ-14-0376, 2014 WL 3428933, at *4 (D. Md. July 10, 2014) (finding that although "the parties' agreement as to the proper disposition of the funds has mooted the interpleader claim" the court retained jurisdiction to dispose of the funds in conformity with the parties

other cases. In *Nash*, DOJ represented that once a stakeholder invoked "the jurisdiction of this Court in interpleader, the action is not moot until the Court has adjudicated the parties' claims and ordered the disposition of the funds."[112] DOJ now reverses course to instead argue the mootness of the Interpleader Action for two practical reasons.

First, DOJ understands that interpleader law dictates that determining priority of competing claims is based on the principle of "the first in time is the first in right," and Brazil's claim cannot prevail under that framework over the Liquidators' first-in-time domesticated judgment entitling them to the Venus Account Funds.[113] The Interpleader Action commenced on October 20, 2010.[114]

---

agreement); *see also Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406, 415 (S.D.N.Y. 2013) ("[I]n order to render an interpleader action moot, a voluntary agreement must effectuate the purpose of interpleader—to shield the plaintiff from multiple liability—such that a judgment in the action can provide no practical relief to the stakeholder." (quoting *Vincent Metro, LLC v. Yah Realty, LLC*, 1 A.3d 1026, 1032 (Conn. 2010))).

[112] Dkt. 216 at 10 (quoting Resp. in Opp'n to Def. Gwynn's Mot. to Dismiss on Mootness Grounds, and Cross-Motion for Summary J. [Dkt. 31], *Nash v. Gwynn*, No. 14-cv-376 (D. Md. Apr. 21, 2014)).

[113] *E.g.*, *U.S. By & Through I.R.S. v. McDermott*, 507 U.S. 447, 449 (1993) (holding that "[p]riority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right'"); *see also Avant Petroleum, Inc. v. Banque Paribas*, 652 F. Supp. 542, 547 (S.D.N.Y. 1987) ("When the interpleader actions were commenced and the funds deposited in Court, the respective and relative rights of Paribas and BP, as well as other claimants, were in place, with Paribas' right thereto superior to that of BP.").

[114] JA001.

36

The S.D.N.Y. Bankruptcy Court domesticated TCB's August 2010 BVI judgment against Kesten on October 26, 2010.[115] Brazil, on the other hand, did not obtain a criminal judgment until February 17, 2012, nearly 16 months after the Interpleader Action was filed, and that foreign judgment was not deemed final and unappealable until March 16, 2018, over seven years after the Interpleader Action was filed. ***TCB is first in time and, therefore, first in right***.[116]

Additionally, DOJ understands that after Brazil's counsel withdrew from representing Brazil in the Interpleader Action years ago, Brazil is prohibited from proceeding *pro se* in the Interpleader Action under 28 U.S.C. § 1654.[117] After the withdrawal of Brazil's counsel in 2016, the District Court presented Brazil with a choice of two paths going forward in the Interpleader Action: (1) retain new

---

[115] Dkt. 210-5.

[116] *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988); *see also XL Specialty Ins. Co. v. Lakian*, 243 F. Supp. 3d 434, 447 (S.D.N.Y. 2017) (dismissing claims to interpleaded funds deposited in 2014 when, notwithstanding that the claimant commenced litigation in 2012, it did not have an arbitration judgment until 2016).

[117] *See Rowland v. Calif. Men's Colony*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities." (citations omitted)); *U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16 (D.D.C. 2003) ("Because a relator represents the United States in a *qui tam* FCA action, this Court must conclude that under 28 U.S.C. § 1654 the plaintiff is not qualified as a lay person to represent the interests of the United States in court proceedings.").

counsel or (2) have the United States represent it.[118] The District Court ordered Brazil to provide notification as to how it planned to proceed by December 7, 2016.[119] Brazil flagrantly defied that order and provided the District Court no notification.

Instead, DOJ filed a response with the District Court on December 9, 2016, stating that Brazil would not obtain new counsel or be represented by the United States, but instead would remain unrepresented in this Interpleader Action.[120] Specifically, DOJ informed the District Court that it "has confirmed that Brazil will not retain new counsel" in the Interpleader Action.[121] And DOJ affirmatively did not take on any representation of Brazil as an interpleader defendant, clarifying that it would only participate in the Interpleader Action as the plaintiff.[122] Thus, Brazil chose to go forward unrepresented in the Interpleader Action. Citing the stay of the Interpleader Action then in place, the District Court declined to enter a

---

[118] Dkt. 177.

[119] *Id.*

[120] Dkt. 178.

[121] *Id.*

[122] *Id.* (stating that "the United States, as Interpleader Plaintiff, will remain a party to the instant Interpleader matter" and that it "will continue to monitor this matter. . . ."). DOJ later acknowledged that it "is not authorized by any relevant treaty to represent Brazil in civil actions and the United States cannot do so here." Dkt. 181 at 3 n.2.

default against Brazil for remaining unrepresented at that time.[123] Because the District Court has now lifted the stay, DOJ understood that the consequence of Brazil's earlier choice was simple: Brazil's answer would be stricken in the Interpleader Action and a default judgment would be entered against Brazil.[124]

Recognizing that Brazil could not prevail in the second interpleader stage, DOJ reversed course and sought dismissal of the Interpleader Action as moot. The District Court erred by permitting DOJ, as the stakeholder plaintiff, to short-circuit the Interpleader Action—which DOJ *itself* initiated—by moving for its dismissal during the second interpleader stage a full decade later. In doing so, the District Court effectively allowed DOJ to apply its thumb to the scale and direct the dispensation of the Venus Account Funds to Brazil to the prejudice of the TCB

---

[123] JA159 (ruling that "given the current stay, Brazil's unrepresented status has no effect on the proceedings at this time").

[124] *See, e.g.*, *Research Air, Inc. v. Kempthorne*, 589 F. Supp. 2d 1, 8 (D.D.C. 2008) ("As a preliminary matter, Research Air must be dismissed from this case because it is no longer represented by counsel." (citing 28 U.S.C. § 1654)); *Liberty Mut. Ins. Co. v. Hurricane Logistics Co.*, 216 F.R.D. 14, 16 (D.D.C. 2003) (ordering corporate interpleader defendants to engage counsel and warning that "[i]f they have not retained counsel, the court will strike their answers"); *Great Am. Ins., Co. v. M & D Transp. Servs., Inc.*, No. 15-CV-087, 2015 WL 4038672, at *2 (S.D. Ohio June 30, 2015) (holding that failure of corporate interpleader defendants to enter an appearance through counsel warrants entry of default judgment); *see also Great Am. Ins.*, 2015 WL 4038672 at *2 ("The defaulting party's interest in the funds at issue in an interpleader action is terminated upon entry of a default judgment.").

liquidation estate.[125] The Liquidators, who have vigorously pursued their rights to the Venus Account Funds for more than a decade, therefore seek reversal of the order of dismissal and remand of the case with instructions consistent with the prayer for relief in DOJ's October 2010 interpleader complaint: permit the Liquidators and Brazil to continue to "litigate among themselves their claims to the funds described" before the District Court ultimately "determine[s] and enter[s] an order setting forth the proper recipients of the seized funds."[126]

### B. The law of judicial estoppel is definitive that DOJ should not have been permitted to obtain dismissal of the Interpleader Action based on arguments directly contrary to its earlier positions in the same case.

Because DOJ itself initiated the Interpleader Action, DOJ should have been judicially estopped from prevailing on the argument that the Interpleader Action is moot.[127] In this Circuit, "[t]here are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in

---

[125] JA133 ("An interpleader suit, by its very nature, identifies various *possible* claimants to the funds at issue, but leaves it to the court to decide which, if any, have a valid claim.").

[126] JA039.

[127] *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (observing that doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (citations and quotations omitted)).

persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?"[128]

As an initial matter, DOJ's current position is plainly inconsistent with its earlier positions. In filing the Interpleader Action over a decade ago, DOJ pleaded that it "faces competing demands by the Interpleader Defendants, and cannot determine, without hazard to itself, how to proceed."[129] Those Interpleader Defendants included both the Liquidators and Brazil. Pursuant to 28 U.S.C. § 1335 (a)(2), the United States deposited the Venus Account Funds into the court registry to be held *in custodia legis* so the Interpleader Defendants could "litigate among themselves their claims to the funds described," and that court could "determine and enter an order setting forth the proper recipients of the seized funds."[130] By

---

[128] *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010).

[129] JA031–32; *see also NYLife Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 381 (3d Cir. 1995) (noting that "it has long been recognized that the interpleader statute is remedial, aimed at assisting a party who fears the vexation of defending multiple claims to a fund or property under his control by providing him the opportunity to satisfy his obligation in a single proceeding").

[130] JA039.

depositing funds to be held *in custodia legis*, an interpleader plaintiff surrenders the right to request "backsies," as DOJ did here.[131]

The Liquidators, for their part, sought to dismiss the Interpleader Action in a motion filed on November 11, 2010, arguing, *inter alia*, that DOJ failed to establish that distributing the Venus Account Funds to the Liquidators could expose it to multiple liabilities, as required to support an interpleader action.[132] DOJ filed a response in opposition to that motion on November 29, 2010, arguing that it was exposed to multiple vexation against the Venus Account Funds because Brazil was not required to claim a "present interest" in the interpleaded funds under 28 U.S.C. § 1335, and that "each potential interpleader defendant's respective interest in the interpleaded funds is the core issue in the instant interpleader and it is this Court's task to determine the adequacy of [] Brazil's claimed interest or that of any other party that appears in this action."[133] DOJ also argued that it "should not be required to risk guessing which interpleader's claim is more valid and the pending interpleader action in this Court will provide a proper forum in which all parties' respective rights pertaining to the disputed funds could

---

[131] *See Avant Petroleum, Inc.*, 652 F. Supp. at 547 ("The Court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them.").

[132] *See* Dkt. 17.

[133] Dkt. 25 at 2.

be litigated and adjudicated in a single proceeding."[134] The New York District Court accepted DOJ's argument when it denied the Liquidators' motion to dismiss.[135]

Finally, having chosen the forum and the rules for deciding the merits and relative priority of the claims of the Liquidators and Brazil, equity should not permit DOJ to upend the chessboard merely because it is unhappy with the outcome. The District Court's decision means that DOJ has been permitted to effectively wield the Interpleader Action against the Liquidators as the sort of pre-judgment restraining order this Court ruled was prohibited in *Tiger Eye*. Months before DOJ filed the Interpleader Action, it moved to dissolve the restraining order on the Interpleaded Funds in recognition of *Tiger Eye*'s unquestionable application.[136] In moving to dismiss Brazil from the Interpleader Action in 2010, the Liquidators recognized that DOJ filing the Interpleader Action was "tantamount to an effort to extend" the restraining order on the Venus Account Funds that was dissolved by the D.C. District Court months earlier.[137] DOJ

---

[134] *Id*. at 8.

[135] JA058 (noting "the possible vexations facing the U.S. if these funds are not properly disbursed through this interpleader action").

[136] JA182.

[137] Dkt. 27 at 2; *see also In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Account No. 8870792 in name of Tiger Eye Investments, Ltd.*, 613 F.3d 1122, 1130 (D.C. Cir. 2010).

interpleading the Venus Account Funds as an asset protection maneuver forced the Liquidators to litigate for over a decade to pursue their rights to the Venus Account Funds, rather than being able to proceed unimpeded in executing on TCB's domesticated judgment back in 2010.

It would also be inequitable to condone DOJ's use of the Interpleader Action as an injunction that prevented one adverse claimant, the Liquidators, from executing on their first-in-time judgment while allowing another adverse claimant, Brazil, to improve its claim to the Venus Account Funds over the course of a decade (and despite being unrepresented in flagrant disregard of a court order), in direct contravention of one of the central tenets of interpleader. In the words of the Ninth Circuit, "[a]s the entire point of an interpleader action is to resolve the competing rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position."[138] Yet that is precisely what the District Court has allowed to happen here. As the Fifth Circuit has

---

[138] *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370–71 (9th Cir. 1997) (holding that "priority of claims to the res in an interpleader action must normally be determined at the time the action is initiated, and cannot be altered by events after the interpleader fund becomes viable"); *White v. F.D.I.C.*, 19 F.3d 249, 253 (5th Cir. 1994) (holding that "when an action in interpleader is brought, the court should, absent extraordinary circumstances, determine the relative priorities of all claimants as of the time that the interpleader action was initiated"); *Avant Petroleum, Inc.*, 853 F.2d at 144 (holding that priority is fixed at time interpleader action initiated).

cautioned, "[a]llowing one party to enhance his claim while the other claimants patiently await a determination from the court would be inequitable, as well as inconsistent with" the interpleader action's objective: "to determine the respective and relative rights of the parties asserting claims as of the date. . . the action was commenced."[139]

At bottom, this Court should not sanction interpleader being treated as a mechanism that turns the court system into a bank that provides the stakeholder plaintiff a reversionary interest in the Venus Account Funds. Moreover, DOJ should not be permitted to abuse judicial process by withdrawing the Venus Account Funds as it pleases after depositing them in the court registry in 2010 on the pretense that the District Court, not DOJ, should decide which claimant has priority.[140]

Because all three requirements for judicial estoppel in this Circuit were established, the District Court erred by failing to apply that doctrine to deny DOJ's

---

[139] *White*, 19 F.3d at 253.

[140] Under such circumstances, a court normally has discretion to "impose an award of attorneys' fees against a party who abuses the interpleader process, by, for example, initiating an interpleader action so as to keep funds away from a party legally entitled to them." *Wolfe v. Estate of Conzen*, 791 F. Supp. 2d 348, 351 (S.D.N.Y. 2011); *accord John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457, 461 (7th Cir. 1954) (finding that interpleader defendant was entitled to recover reasonable attorneys' fees because of plaintiff's "vexatious and unreasonable" conduct in filing interpleader to delay payment of insurance proceeds).

motion to dismiss premised on an argument—that DOJ is capable of determining priority to the Venus Account Funds among multiple claimants without the District Court's assistance—that is directly contrary to the ones that DOJ advanced and the District Court accepted during the first interpleader stage. The District Court's ruling should therefore be reversed so that the adverse claimants can litigate among themselves through summary judgment on remand.[141]

## **CONCLUSION**

The Court should reverse and remand so this case may proceed to the merits.

---

[141] As noted above, prior to granting DOJ's motion to dismiss for mootness, the District Court denied without prejudice the Liquidators' motion for summary judgment and DOJ's cross-motion for summary judgment following full briefing on those motions, so that it could first rule on DOJ's motion to dismiss. JA173.

Dated: May 24, 2023                    Respectfully submitted,

                                       REID COLLINS & TSAI LLP
                                       1301 S. Capital of Texas Hwy, Suite C-300
                                       Austin, Texas 78746
                                       T: (512) 647-6100
                                       F: (512) 647-6129

                                       /s/ *Craig A. Boneau*
                                       William T. Reid, IV
                                       wreid@reidcollins.com
                                       Craig A. Boneau
                                       cboneau@reidcollins.com
                                       Scott D. Saldaña
                                       ssaldaña@reidcollins.com

                                       Law Office of Chun T. Wright, PLLC
                                       1775 Eye Street, NW, Suite 1150
                                       Washington, DC 20006
                                       T: (202) 559-4300
                                       F: (202) 747-7674

                                       /s/ *Chun T. Wright*
                                       Chun T. Wright
                                       chun@ctwrightlaw.com

                                       *Counsel for Interpleader Defendants-*
                                       *Appellants Gordon MacRae and Elizabeth*
                                       *Mackay, as Joint Official Liquidators of*
                                       *Trade and Commerce Bank – in official*
                                       *liquidation*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,042 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Word in 14 point Times New Roman font.

Date: May 24, 2023                          /s/ *Craig A. Boneau*
                                            Craig A. Boneau
                                            *Attorney for Interpleader Defendants-Appellants*

48

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certify that the foregoing Brief for Interpleader Defendants-Appellants was served on May 24, 2023, by this Court's electronic filing system.

/s/ *Craig A. Boneau*
Craig A. Boneau
*Attorney for Interpleader Defendants-Appellants*

49

ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

28 USCA § 1335 Interpleader...........................................................................ADD 1

28 USCA § 2361 Process and procedure.........................................................ADD 2

28 USCA § 2467 Enforcement of foreign judgment ......................................ADD 3

United States Code Annotated
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        Part IV. Jurisdiction and Venue (Refs & Annos)
            Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1335

§ 1335. Interpleader

Effective: February 18, 2005
Currentness

**(a)** The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

**(b)** Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

### CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 931; Pub.L. 109-2, § 4(b)(1), Feb. 18, 2005, 119 Stat. 12.)

28 U.S.C.A. § 1335, 28 USCA § 1335
Current through P.L. 118-3. Some statute sections may be more current, see credits for details.

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

ADD 1

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Particular Proceedings
Chapter 159. Interpleader

28 U.S.C.A. § 2361

§ 2361. Process and procedure

Currentness

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 970; May 24, 1949, c. 139, § 117, 63 Stat. 105.)

28 U.S.C.A. § 2361, 28 USCA § 2361
Current through P.L. 118-3. Some statute sections may be more current, see credits for details.

**End of Document**                                                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

ADD 2

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part VI. Particular Proceedings
      Chapter 163. Fines, Penalties and Forfeitures (Refs & Annos)

28 U.S.C.A. § 2467

§ 2467. Enforcement of foreign judgment

Effective: December 22, 2010
Currentness

**(a) Definitions.**--In this section--

**(1)** the term "foreign nation" means a country that has become a party to the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances (referred to in this section as the "United Nations Convention") or a foreign jurisdiction with which the United States has a treaty or other formal international agreement in effect providing for mutual forfeiture assistance; and

**(2)** the term "forfeiture or confiscation judgment" means a final order of a foreign nation compelling a person or entity--

**(A)** to pay a sum of money representing the proceeds of an offense described in Article 3, Paragraph 1, of the United Nations Convention, any violation of foreign law that would constitute a violation or an offense for which property could be forfeited under Federal law if the offense were committed in the United States, or any foreign offense described in section 1956(c)(7)(B) of title 18, or property the value of which corresponds to such proceeds; or

**(B)** to forfeit property involved in or traceable to the commission of such offense.

**(b) Review by Attorney General.--**

**(1) In general.**--A foreign nation seeking to have a forfeiture or confiscation judgment registered and enforced by a district court of the United States under this section shall first submit a request to the Attorney General or the designee of the Attorney General, which request shall include--

**(A)** a summary of the facts of the case and a description of the proceedings that resulted in the forfeiture or confiscation judgment;

**(B)** certified [1] copy of the forfeiture or confiscation judgment;

ADD 3

**(C)** an affidavit or sworn declaration establishing that the foreign nation took steps, in accordance with the principles of due process, to give notice of the proceedings to all persons with an interest in the property in sufficient time to enable such persons to defend against the charges and that the judgment rendered is in force and is not subject to appeal; and

**(D)** such additional information and evidence as may be required by the Attorney General or the designee of the Attorney General.

**(2) Certification of request.**--The Attorney General or the designee of the Attorney General shall determine whether, in the interest of justice, to certify the request, and such decision shall be final and not subject to either judicial review or review under subchapter II of chapter 5, or chapter 7, of title 5 (commonly known as the "Administrative Procedure Act").

**(c) Jurisdiction and venue.--**

**(1) In general.**--If the Attorney General or the designee of the Attorney General certifies a request under subsection (b), the United States may file an application on behalf of a foreign nation in district court of the United States seeking to enforce the foreign forfeiture or confiscation judgment as if the judgment had been entered by a court in the United States.

**(2) Proceedings.**--In a proceeding filed under paragraph (1)--

**(A)** the United States shall be the applicant and the defendant or another person or entity affected by the forfeiture or confiscation judgment shall be the respondent;

**(B)** venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property that may be the basis for satisfaction of a judgment under this section may be found; and

**(C)** the district court shall have personal jurisdiction over a defendant residing outside of the United States if the defendant is served with process in accordance with rule 4 of the Federal Rules of Civil Procedure.

**(d) Entry and enforcement of judgment.--**

**(1) In general.**--The district court shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation unless the court finds that--

**(A)** the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law;

**(B)** the foreign court lacked personal jurisdiction over the defendant;

**(C)** the foreign court lacked jurisdiction over the subject matter;

ADD 4

**(D)** the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property of the proceedings [2] in sufficient time to enable him or her to defend; or

**(E)** the judgment was obtained by fraud.

**(2) Process.**--Process to enforce a judgment under this section shall be in accordance with rule 69(a) of the Federal Rules of Civil Procedure.

**(3) Preservation of property.--**

**(A) Restraining orders.--**

**(i) In general.**--To preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for, and the court may issue, a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

**(ii) Procedures.--**

**(I) In general.**--A restraining order under this subparagraph shall be issued in a manner consistent with subparagraphs (A), (C), and (E) of paragraph (1) and the procedural due process protections for a restraining order under section 983(j) of title 18.

**(II) Application.**--For purposes of applying such section 983(j)--

**(aa)** references in such section 983(j) to civil forfeiture or the filing of a complaint shall be deemed to refer to the applicable foreign criminal or forfeiture proceedings; and

**(bb)** the reference in paragraph (1)(B)(i) of such section 983(j) to the United States shall be deemed to refer to the foreign nation.

**(B) Evidence.**--The court, in issuing a restraining order under subparagraph (A)--

**(i)** may rely on information set forth in an affidavit describing the nature of the proceeding or investigation underway in the foreign country, and setting forth a reasonable basis to believe that the property to be restrained will be named in a judgment of forfeiture at the conclusion of such proceeding; or

**(ii)** may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General pursuant to subsection (b)(2).

ADD 5

**(C) Limit on grounds for objection.**--No person may object to a restraining order under subparagraph (A) on any ground that is the subject of parallel litigation involving the same property that is pending in a foreign court.

**(e) Finality of foreign findings.**--In entering orders to enforce the judgment, the court shall be bound by the findings of fact to the extent that they are stated in the foreign forfeiture or confiscation judgment.

**(f) Currency conversion.**--The rate of exchange in effect at the time the suit to enforce is filed by the foreign nation shall be used in calculating the amount stated in any forfeiture or confiscation judgment requiring the payment of a sum of money submitted for registration.

### CREDIT(S)

(Added Pub.L. 106-185, § 15(a), Apr. 25, 2000, 114 Stat. 219; amended Pub.L. 107-56, Title III, § 323, Oct. 26, 2001, 115 Stat. 315; Pub.L. 111-342, § 2, Dec. 22, 2010, 124 Stat. 3607.)

### Footnotes

1        So in original. Probably should be preceded by "a".

2        So in original. The phrase "of the proceedings" probably should not appear.

28 U.S.C.A. § 2467, 28 USCA § 2467
Current through P.L. 118-3. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

ADD 6