**No. 22-5255**
(Oral Argument Not Yet Scheduled)

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

UNITED STATES of AMERICA
(Plaintiff-Appellee)

v.

BARRY FISCHER LAW FIRM, LLC, KESTEN DEVELOPMENT
CORPORATION, TURIST-CAMBIO VIAGENS E TURISMO LTDA,
THE FEDERATIVE REPUBLIC OF BRAZIL, AND TAMMY FU AND
ELEANOR FISHER AS LIQUIDATORS OF TRADE AND COMMERCE
BANK

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA, No. 1:15-cv-00116 (Walton, R.)

_____

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

_____

KENNETH A. POLITE
Assistant Attorney General

KEVIN DRISCOLL
Deputy Assistant Attorney General

JENNIFER WALLIS
MICHAEL C. OLMSTED
Criminal Division, Money Laundering
  and Asset Recovery Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, DC 20005
(202) 514-1263
Jennifer.Wallis@usdoj.gov

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Cir. R. 28(a)(1), counsel for the government certifies as follows:

### A.      Parties and *Amici*

The parties appearing in the district court on this interpleader action were the United States of America as the Interpleader Plaintiff, and the following, who appeared as the Interpleader Defendants:

> Barry Fischer Law Firm, LLC.,
>
> Trade and Commerce Bank (by and through its Joint Official Liquidators Elizabeth Mackay and Gordon MacRae)
>
> The Federative Republic of Brazil;
>
> Kesten Development Corporation, Turist-Cambio Viagenes E Turismo Ltda;

The Appellant before this Court of Appeals is the Trade and Commerce Bank (by and through its Joint Official Liquidators Elizabeth Mackay and Gordon MacRae) (hereafter "Liquidators").  The Liquidators were previously represented "by and through its Liquidators Tammy Fu and Eleanor Fisher," though the Notice of Appeal identifies new Official Liquidators.  Kesten Development Corp. has advised the District Court that it will not be participating in briefing or arguing this appeal.  The Federative Republic of Brazil discontinued its participation in the case in light of the Court of Appeals for the Second Circuit's ruling that it must pursue

its interest in the property through the companion case filed pursuant to 28 U.S.C. § 2467, which has subsequently been adjudicated in favor of Brazil's interest (14-mc-222, ECF 36; JA 234-235). Barry Fischer Law Firm did not object to the Motion to Dismiss in the lower court and has not filed a Notice of Appeal. The United States appears as Appellee. There are no intervenors or *amici*.

### B.    Rulings Under Review

The ruling under review is the Order of the District Court (R. B. Walton) dated September 12, 2022, granting the Motion to Dismiss Interpleader Action as Moot in Civil Action 15-cv-116. There are no official citations to the September 12, 2022 order.

### C.    Related Cases

This case was the subject of an appeal previously decided by the Court of Appeals for the Second Circuit in *United States v. The Federative Republic of Brazil*, 748 F.3d 86 (2d Cir. 2014). Following the remand in that appeal to the District Court for the Southern District of New York, this case was transferred to the District Court for the District of Columbia and docketed at 15-cv-116 (RBW), where a related case was then pending.[1] The related case that had been pending in the District of

---

[1] A related declaratory judgment case was also transferred from the Southern District of New York to the District of Columbia and docketed at *De Almeida v. Fu*, Case No. 15-cv-117 (RBW). The United States is not a party to that case.

Columbia, *In re $6,871,042.36 and Accrued Interest* was docketed at 14-mc-1222 (RBW).  A mandamus motion was filed in that case, docketed in this Circuit Court and decided as *In re: Trade and Commerce Bank* No. 17-5154, 890 F.3d 301 (D. C. Cir. 2018).

There was also prior litigation over the subject account in New Jersey, which is not pertinent to the issues in this case.  Pursuant to D.C. Cir. R. 28(a)(1)(C), counsel for the government states that they are not aware of any other related cases in this Court or any other court involving substantially the same parties and the same or similar issues.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED
CASES ........................................................................................................i

TABLE OF CONTENTS......................................................................iv

TABLE OF AUTHORITIES .................................................................v

GLOSSARY OF ABBREVIATIONS .................................................. viii

STATEMENT OF JURISDICTION......................................................1

ISSUE STATEMENT............................................................................1

STATEMENT OF FACTS ....................................................................1

STANDARD OF REVIEW ....................................................................8

SUMMARY OF ARGUMENT ..............................................................8

ARGUMENT .........................................................................................9

    A. The District Court correctly construed the Second Circuit opinion and mandate ..........................................................................9

    B. Section 2467 and its legislative history confirm the mootness of interpleader action .............................................................13

    C. The Second Circuit's mandate is the law of the case .............................18

    D. The District Court correctly found that the interpleader action is now moot because the issue presented is no longer live ...............................22

    E. Judicial estoppel does not apply .............................................................25

    F. The District Court's deference to the Second Circuit's mandate and Brazil's compliance with its obligations under § 2467 ends otherwise duplicative litigation ...............................................................27

CONCLUSION.....................................................................................29

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Council of Blind v. Mnuchin,* 977 F.3d 1 (D.C. Cir. 2020) ............................19

*Any and All Funds and Other Assets, in Brown Bros. Harriman & Co. Account #8870792 in the Name of Tiger Eye Investment Ltd*., 613 F.3d 1122 (D.C. Cir. 2010) ........................................................................................................................2

*Christianson v. Colt Industries Operating Crop.* 486 U.S. 800 (1988) ..............8, 19

*Church of Scientology v. United States,* 506 U.S. 9 (1992) ...................................23

*County of Suffolk, N.Y. v. Sebelius,* 605 F.3d, 135 (2d Cir. 2010) .........................23

*Crocker v. Piedmont Aviation*, 49 F.3d 735 (D.C. Cir. 1995) ................................19

*Del Monte Fresh Produce Co. v. United States,* 570 F.3d 316 (D.C. Cir.2009) .......8

*Grand Manor Health Related Facility, Inc., v. Hamilton Equities Inc.*, 941 F.Supp.2d 406 (S.D.N.Y. 2013) .......................................................................23, 24

*In Re $6,871,042.36, and Accrued Interest, in Funds Formerly Held in Account Number *******07, at MTB Bank in New Jersey, Currently on Deposit in an Account Controlled by the United States District Court for the Southern District of New York*, 217 F. Supp. 3d 84 (D.D.C. 2016) ......................................................2, 5

*In Re: $6,871,042.36, and Accrued Interest, in Funds Formerly Held in Account Number XXXXXXXXX, at MTB Bank in New Jersey, Currently on Deposit in an Account Controlled by the United States District Court for the District of Columbia,* 1:14-mc-01222-RBW, 2021 WL 1208942 (D.D.C. Mar. 31, 2021) …………………………………………………………………………………………..6

*In re Seizure of Approx. $12,116,153.16,* 903 F. Supp. 2d 19 (D.D.C. 2012) ........16

*In re: Trade and Commerce Bank, by and through its Liquidators Eleanor Fisher and Tammy Fu,* 890 F.3d 301 (D.C. Cir. 2018).................................................. iii, 6

v

*Independent Petroleum Ass'n of America v. Babbitt,* 235 F.3d 588 (D.C. Cir. 2001) .........................................................................................................19

*Judicial Watch, Inc. v. National Energy Policy Development Group*, 219 F. Supp. 2d 20 (D.D.C. 2002)...........................................................................21

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) .......................................19, 22

*Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Clemente*, 2002 WL 1162901 (S.D.N.Y. May 31, 2002)...............................................................................23

*New Hampshire v. Maine*, 532 U.S. 742 (2001)...............................................25, 26

*Northwestern Ind. Tel. Co. v. FCC,* 872 F.2d 465 (D.C. Cir. 1989) .....................19

*Philippines v. Pimentel*, 553 U.S. 851 (2008) ........................................................24

*Schmidt v. United States*, 749 F.3d 1064 (D.C. Cir. 2014)......................................8

*United States v. All Right to & Int. In PNC Corp. Plaza Holdings LLC*, No. 20-cv-23278, 202 WL 17653218 (S.D. Fla. Sept. 28, 2022) ...........................................17

*United States v. Barry Fischer Law Firm*, No. 10-Civ-7997, 2012 WL 5259214 (S.D.N.Y. Oct. 24, 2012) ...................................................................................3, 4

*United States v. Federative Republic of Brazil*, 748 F.3d 86 (2d Cir. 2014) ........................................................... ii, 2, 4, 8, 9, 12, 16, 20, 21, 24, 25, 26, 27

*United States v. High Technology Products, Inc.* 497 F.3d 637 (6th Cir. 2007) ......................................................................................................15

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................................................18

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002) ......................................19

*United States v. White*, 779 F. Supp. 2d 984 (D. Minn. 2011) ...............................27

*Usoyan v. Republic of Turkey*, 6 F.4th 31 (D.C. Cir. 2021) ...................................18

vi

# FEDERAL STATUTES

28 U.S.C. §1291 .................................................................................1

28 U.S.C. § 1335.................................................................................1

28 U.S.C. § 2467................................................ ii, 1, 2, 4, 5, 9, 11, 13, 14, 16, 21

Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 .....................................................................3

# MISCELLANEOUS

H.R. Rep. No. 107-250, Sec. 118 (2001)............................................13, 17

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **Brazil** | The Federative Republic of Brazil |
| **District Court** | District Court for the District of Columbia |
| **First 2467 Action** | *United States v. Antonio Pires De Almeida et al.*, 05-mc-40 |
| **JA** | Joint Appendix |
| **Liquidators** | Trade and Commerce Bank, by and through its Joint Official Liquidators Elizabeth Mackay and Gordon MacRae |
| **Second 2467 Action** | *In re $6,871,042.36, and Accrued Interest, in Funds Formerly Held in Account Number *******07, at MTB Bank in New Jersey, Currently on Deposit in an Account Controlled by the United States District Court* 14-mc-1222 |

## STATEMENT OF JURISDICTION

This Court has jurisdiction of appeals from all final decisions of the district courts of the United States under 28 U.S.C. § 1291.  The District Court for the District Court of Columbia had jurisdiction in the underlying forfeiture enforcement case pursuant to 28 U.S.C. § 2467 and the Interpleader Action under 28 U.S.C. §1335.

## ISSUE STATEMENT

Whether, in light of the Second Circuit's mandate in this case directing the parties to resolve the claims to a bank account exclusively through litigation under 28 U.S.C. § 2467 and following the resolution of that matter in favor of the United States on behalf of the Federative Republic of Brazil, the District Court erred in dismissing this Interpleader Action as moot.

## STATEMENT OF FACTS

The pertinent litigation in this matter began in 2005 when the United States responded to a treaty request from Brazil to seize and to forfeit funds representing the proceeds of crime previously contained in a bank account held in the United States (the "Venus Account").  *See* 05-mc-40, ECF 2; Joint Appendix ("JA") 176. The Venus Account, according to the Brazilian treaty request, was used to send criminal proceeds in the United States to facilitate the illegal purchase and sale of foreign currency in violation of Brazilian law.  *Id.*  During the eighteen years of

1

litigation over the account and its related Brazilian criminal schemes, the forum, the

parties, and the relevant statutory scheme have all changed.[2]   The United States

initially sought to restrain the Venus Account pursuant to an order authorized under

28 U.S.C. § 2467.  *See United States v. Antonio Pires De Almeida et al.*, 05-mc-40

("First 2467 Action"); JA 176-178.   Section 2467 authorizes the United States to

seek enforcement of restraining orders to preserve assets for foreign forfeitures.  To

discharge its treaty obligations, the United States applied to the District Court for the

District of Columbia (the "District Court") for a restraining order.  05-mc-40, ECF

2.  The District Court issued a restraining order preserving the funds for possible

forfeiture under Brazilian law.  *See* 05-mc-40, ECF 4; JA 179-181.

Following a decision in *In re: Any and All Funds and Other Assets, in Brown

Bros. Harriman & Co. Account #8870792 in the Name of Tiger Eye Investment Ltd*.

("*Tiger Eye*"), 613 F.3d 1122 (D.C. Cir. 2010), which held that § 2467 did not

authorize a restraining order based upon less than an order of forfeiture, the United

States dismissed the First 2467 Action and initiated this Interpleader Action in the

---

[2] As noted by both the Second Circuit and the District Court for the District
of Columbia, the funds in question are the subject of complex litigation proceeding
for over a decade across multiple jurisdictions. *See In Re $6,871,042.36, and
Accrued Interest, in Funds Formerly Held in Account Number *******07, at MTB
Bank in New Jersey, Currently on Deposit in an Account Controlled by the United
States District Court for the Southern District of New York*, 217 F. Supp. 3d 84, 87
(D.D.C. 2016); JA 196; *United States v. Federative Republic of Brazil*, 748 F.3d 86,
88–89 (2d Cir. 2014); JA 115-119.

Southern District of New York.  *See* 05-mc-00040, ECF 26; JA 182-183.  The

Interpleader Action was designed to resolve the Brazilian claim to the account and

the competing claims raised by the defendants here.  *See* 15-cv-116, ECF 1; JA 031-

040.  The United States deposited the funds into the registry of the District Court for

the Southern District of New York and notified all the interpleader defendants,

including Brazil, who had claimed an interest in the Venus Account.  *See* 15-cv-116,

ECF 4.

Two months later, Congress amended Section 2467, effectively reversing the

*Tiger Eye* precedent and allowing a restraining order to be entered prior to an order

of forfeiture.  *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010,

Pub. L. No. 11-342, 124 Stat. 3607.

Litigation in the Interpleader Action continued.  JA 001-030.  Realleging the

basis of the First 2467 Action, Brazil asserted its superior interest in the Venus

Account based on the then-pending criminal proceedings against the Brazilian

defendants who established and beneficially owned the Venus Account.  *See* 15-cv-

116, ECF 65; JA 082-089.  The District Court for the Southern District of New York

granted Brazil's summary judgment motion.  *See United States v. Barry Fischer Law

Firm, LLC*, No. 10–Civ–7997, 2012 WL 5259214, at *3 (S.D.N.Y. Oct. 24, 2012);

JA 099-112.

On appeal, the Second Circuit held that the "penal law rule" generally does not allow the United States to enforce foreign criminal law, and that 28 U.S.C. § 2467, but not the interpleader process, creates an exception to that rule.  *United States v. Federative Republic of Brazil*, 748 F.3d 86 (2d Cir. 2014); JA 113-140. The Second Circuit remanded the case to the district court with the suggestion that Brazil secure its interest in the Venus Account by seeking assistance through 28 U.S.C. § 2467.  *Id.*  The Second Circuit further ordered the United States to file the enforcement action under 28 U.S.C. § 2467 no later than November 3, 2014.  *See United States v. Barry Fischer Law Firm*, No. 1:10-cv-07997, ECF 131; JA 141. The Second Circuit said:

> Thus, we remand this case to the district court with instructions that it afford Brazil a reasonable period of time to request and the Attorney General a reasonable period of time to file a § 2467 enforcement action. If Brazil fails, or if the Attorney General declines[] to do so, the district court shall then determine, in light of our decision today, whether any interpleader party is entitled to the funds seized from the Venus Account.

*See The Federative Republic of Brazil*, 748 F.3d at 97; JA 137-138.

Both Brazil and the United States complied with the Second Circuit's directions.  Brazil submitted a treaty request, and on November 3, 2014, the United States applied to the District Court for a restraining order against the Venus Account funds, pursuant to the amended 28 U.S.C. § 2467.  *See In re $6,871,042.36, and Accrued Interest, in Funds Formerly Held in Account Number \*\*\*\*\*\*07, at MTB Bank in New Jersey, Currently on Deposit in an Account Controlled by the United*

4

*States District Court*, 14-mc-1222, ECF 1 ("Second 2467 Action"); 28 U.S.C.
§ 2467(c)(2)(B) (venue is proper in the District of Columbia).

In January 2015, to "promote efficiency by consolidating all claims to the
subject assets before the same judge," the District Court for the Southern District of
New York *sua sponte* transferred this Interpleader Action to the District Court,
where it was assigned to Judge Reggie Walton, before whom the Second 2467
Action was pending. *See* 15-cv-116, ECF 158, Order at 4; JA 143-146; JA 184-188.
In deference to the Second Circuit's mandate, which had designated § 2467 as the
exclusive means to resolve Brazil's claim (if Brazil chose to request it), the District
Court stayed the Interpleader Action and the declaratory action until "the conclusion
of proceedings in Brazil and until any final forfeiture judgment obtained thereby is
presented for enforcement to this Court." *See* 15-cv-116, ECF 167; JA 147-149.

While this case was stayed, Trade and Commerce Bank, a Cayman Islands
bank, by and through its Liquidators, moved to intervene in the Second 2467 Action
and to dissolve the restraining order. *See* 14-mc-1222, ECF 3. The District Court
allowed the Liquidators to intervene but denied their motion to dissolve the
restraining order. *See In re $6,871,042.36*, 217 F. Supp. 3d 84 (D.D.C. 2016); JA
196-218. Two years later, the District Court again rejected the Liquidators'
contention that the United States' enforcement of a Brazilian restraining order
violated the Second Circuit's mandate. *See* 15-cv-116, ECF 185 at 4-5; JA 157-158.

Following that order, the Liquidators petitioned this Court for writ of mandamus, arguing in essence that the Brazilian litigation was taking too long. *See In Re: Trade and Commerce Bank, by and through its Liquidators Eleanor Fisher and Tammy Fu*, 890 F.3d 301 (D.C. Cir. 2018). After briefing and argument, this Court denied the petition in May 2018. *Id.*

While the mandamus was pending, the Brazilian forfeiture order became final and unappealable. *See* 14-mc-1222, ECF 18. Following denial of the mandamus request, the United States filed its application to enforce and register a certified Brazilian final forfeiture judgment. *Id.* In March 2021, the District Court held, among other things, that the Brazilian forfeiture judgment is enforceable. *See In Re: $6,871,042.36, and Accrued Interest, in Funds Formerly Held in Account Number XXXXXXXX, at MTB Bank in New Jersey, Currently on Deposit in an Account Controlled by the United States District Court for the District of Columbia,* 1:14-mc-01222-RBW, 2021 WL 1208942 (D.D.C. Mar. 31, 2021); JA 219-233. The United States, as guided by the Memorandum Opinion, then moved for entry of a final forfeiture order forfeiting the funds in the Venus Account and stated its intention to file a motion to dismiss the Interpleader Action as moot if the final order was entered. *See* 14-mc-1222, ECF 28, n.3.[3] In June 2021, following a hearing, the

---

[3] In fact, the United States had repeatedly advised all parties and the District Court of its view that the Interpleader Action would be moot if the § 2467 action

District Court granted that motion, registering and enforcing the Brazilian final forfeiture judgment, and entered a final order of forfeiture for the United States. *See* 14-mc-122, ECF 36; JA 234-235; *see also* 1:15-cv-00116, ECF 206 (vacating 2015 Stay Order).  No party appealed.  The District Court has, however, stayed the effect of the final forfeiture order pending resolution of the instant Interpleader Action.  14-mc-122, ECF 36 at 2; JA234.

With entry of a final forfeiture order in favor of the United States in the Second 2467 Action, the United States moved to dismiss this case as moot, citing the Second Circuit's mandate directing that the right to the Venus Account would be decided in the Second 2467 Action, if such an action were pursued.  *See* 15-cv-116, ECF 209; JA 161-172.

The Liquidators opposed the motion to dismiss, arguing that the Second Circuit's mandate meant nothing more than requiring the invocation of § 2467 to substitute appearances in the Interpleader Action. 15-cv-116, ECF 216.  The District Court held that the Second Circuit's mandate decided that (a) if Brazil seeks relief under § 2467, then the § 2467 action would decide the rights to the Venus Account rendering the Interpleader Action obsolete, but (b) if Brazil fails to seek relief or

---

were resolved in favor of Brazil's claim.  *See* 15-cv-116, ECF 176, at 2; ECF 197; 14-mc-1222, ECF 7 at 19.

fails to obtain a final order of forfeiture, then "the district court shall then determine whether any interpleader party is entitled to the funds." *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 137-138; *see also* 15-cv-116, ECF 219; JA 174-175, n.1.  Accordingly, having granted the final order of forfeiture in the Second 2467 Action, the District Court dismissed the Interpleader Action as moot.  *Id.*

    The Liquidators appealed.

## STANDARD OF REVIEW

    This Court "review[s] *de novo* the District Court's dismissal for lack of subject matter jurisdiction, including on mootness grounds." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014); *see also Del Monte Fresh Produce Co. v. United States,* 570 F.3d 316, 321 (D.C. Cir. 2009).  Regarding the law of the case, however, appellate courts should defer to sister Circuits' determinations unless the initial decision was "clearly erroneous."  *See Christianson v. Colt Industries Operating Crop.* 486 U.S. 800, 819 (1988) (citation omitted).

## SUMMARY OF ARGUMENT

    The District Court properly complied with the Second Circuit's mandate and resolved the title to the Venus Account; it therefore also properly dismissed the Interpleader action as moot.  *See* 15-cv-116, ECF 219; JA 174-175.  The Second Circuit's opinion established a hierarchy for resolving the various claims to the Venus Account.  *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 137-138.

If Brazil prevails in a claim under § 2467, title to the Venus Account is resolved in that action. *Id.* If Brazil does not prevail in a § 2467 action, the interpleader action could resolve the claims among the others. *Id.* The District Court followed that hierarchy. Once title vested in the United States, acting pursuant to its Treaty with Brazil, the issue raised in the Interpleader Action was resolved. The District Court rightly dismissed the Interpleader Action as moot and without subject matter jurisdiction, as there was nothing left to adjudicate.

## ARGUMENT

### A. The District Court Correctly Construed the Second Circuit Opinion and Mandate

The Second Circuit held that 28 U.S.C. § 2467 "creates a statutory exception to the penal law rule insofar as it permits the Attorney General of the United States, in his sole discretion, to petition district courts to enforce the forfeiture judgments or confiscation orders of qualifying foreign nations." *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139. A § 2467 action was, therefore, the only way to enforce the Brazilian forfeiture claim. *Id.* The Second Circuit thus made clear that if one of these two requirements occurred, either (1) "Brazil fails" to request forfeiture or (2) "the Attorney General declines" to pursue the Brazilian request, the Interpleader Action would then become relevant to resolve the parties' dispute. *Id.* The Court held that the penal law rule established that a §2467 action was the only

9

way to enforce the Brazilian forfeiture claim, leaving the Interpleader Action to resolve the matter if the §2467 matter was abandoned.  *Id.*

But neither condition occurred.  As noted above, Brazil subsequently requested forfeiture, and the Attorney General litigated the action.  JA 184-188. Nearly two years ago, the District Court entered a final order of forfeiture in favor of the United States that mandates that "the forfeited property [the Venus Account] is the same as forfeited legally in Brazil and is hereby **FORFEITED** to the United States of America" and "all persons claiming any right, title, or interest in or to the forfeited property are held in default."  *See* 14-mc-1222, ECF 36 at 2; JA 235.  The Liquidators participated in that § 2467 action, and did not object to the forfeiture, notwithstanding the United States' stated position in that case that the Interpleader Action would become moot if the court resolved the § 2467 action in its favor.  *See* 14-mc-1222, ECF 7, at 19; ECF 28, n.3.

The Liquidators resist this straightforward reading in two ways, both of which fail.  First, the Liquidators contend that "the only way to support DOJ's reading of the mandate is to insert word 'only' before each if" in the Court of Appeals' requirements.  App. Br. at 23.  It is the Liquidators, however, who propose to rewrite the decision.  The critical language is: "**If** Brazil fails, or **if** the Attorney General declines to do so, the district court **shall then** determine . . . whether any interpleader party is entitled to the funds seized from the Venus Account."  *See* JA 137-138

10

(emphasis added).  The Liquidators urge this Court to conclude that this language means: "if Brazil fails (or even if it doesn't) or if the Attorney General declines to do so (or even if he doesn't), the district court will inevitably determine the interpleader action."

Both logic and context support the United States' contention.  If a condition is irrelevant, it needs not be stated.  The logical phrase "if this, then that" is more reasonable than "if this, or even if not this, then that."  If it had meant what the Liquidators claim, the Second Circuit could simply have said, "After Brazil and the Attorney General act, then the District Court will decide the interpleader case."  But it did not.  The Liquidators reject the logic of the mandate, ignoring the simplicity of the Court's language and the entire premise of the decision invoking the penal law rule.

Context also matters.  Section 2467 is designed to "enforce the foreign forfeiture or confiscation judgment as if the judgment had been entered by a court in the United States."  28 U.S.C. § 2467(c)(1).  The consequence of concluding a § 2467 action is that title to the disputed asset is vested to the United States.  14-mc-1222, ECF 36 at 2; JA 235; *see also*, 18 U.S.C. § 981(f).  But abandoning or declining the § 2467 action leaves the title unclear.  In context, the Second Circuit said: If title is not vested to the United States (because the claim is abandoned or declined), then title can be decided in the Interpleader Action.  It is nonsensical to

11

suggest that the Second Circuit simultaneously meant: Even if title is vested to the United States, then title will be decided in the Interpleader Action.

Second, the Liquidators point to the phrase "before reaching a final decision in this interpleader action" in the Second Circuit decision to support its construction of the mandate. *See* App. Br. at 24. The Second Circuit opinion stated that "while we conclude that the penal law rule requires vacatur of summary judgment in favor of Brazil, we remand this case to the district court with the instructions that it afford Brazil and the Attorney General a reasonable period of time to satisfy § 2467's exception to that rule before reaching a final decision in this interpleader action." *The Federative Republic of Brazil*, 748 F.3d. at 88; JA 116-117. Again, if the Second Circuit had intended to establish the § 2467 action as a first step in an interpleader process, it would have said so. Rather, it held that the alternative forum of a § 2467 action was the exclusive forum to resolve Brazil's claim. JA 137-138. The Court's entire logic of invoking the penal law restriction preempts the Liquidators' argument; the United States can enforce the Brazilian law in a § 2467 action and not in an interpleader action. *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139-140. If the Second Circuit meant that the United States could enforce a Brazilian penal law in a § 2467 action and then again in an interpleader action, it would have said so. The mandate says nothing of the sort, because to do so would ignore the penal law restriction that was the entire point of the decision. *Id.*

12

**B.      Section 2467 and Its Legislative History Confirm the Mootness of Interpleader Action**

The deference shown by both the Second Circuit and the District Court to the procedure set forth by § 2467 was correct.  JA 113-140, 174-175.  Section 2467's legislative history confirms that the statute was enacted to discharge treaty obligations and, in so doing, eliminates *seriatim* and duplicative litigation.  *See* H.R. Report No. 107-250(I), at Sec. 118*.*  Section 2467 purposefully channels challenges to a foreign forfeiture order into the foreign venue.  *Id.; see also* 28 U.S.C. § 2467(d)(3)(C).  Anyone seeking to challenge a U.S. restraint based upon issues that could have been raised in foreign forfeiture proceedings must appear in the foreign action to litigate.  28 U.S.C. § 2467(d)(3)(C).  U.S. courts are then bound by all factual findings from the foreign court.  *See* 28 U.S.C. § 2467(e).  As explained in the section-by-section analysis in the House Report, Congress added subsection (d)(3)(C) to "complement[]" subsection (e) and "prevent[] a litigant from taking 'two bites at the apple' by raising objections to the basis for the forfeiture in the Federal court that he also raised, or is entitled to raise, in the foreign court where the forfeiture action is pending."  H.R. Report No. 107-250(I), at Sec. 118.

The Liquidators contend that nothing in § 2467 forecloses the claimants' further litigation on their entitlement of the funds in the Interpleader Action.  *See* App. Br. 27-29.  That is exactly what § 2467 does.  Section 2467 addresses exclusively forfeiture judgments.  A forfeiture judgment, by its nature, vests title to

13

property in a government. An interpleader action likewise exists for the purpose of determining ownership of property. The two are, therefore, inherently mutually exclusive and allowing an interpleader action to follow a successful § 2467 action would always result in the precise re-litigation of facts that were (or should have been) addressed in the foreign court.[4] If Congress nonetheless intended an interpleader action to follow a successful § 2467 action, it would have written a different statute, one that does not result in "enforce[ment of] the foreign forfeiture or confiscation judgment." *See* 28 U.S.C. § 2467(c)(1).

Here, the question of ownership was litigated in Brazil, and the Liquidators had notice and the opportunity to contest or appeal that order and chose not to. *See* 14-mc-1222, ECF 18-3. Moreover, the Liquidators also had the opportunity to contest or to appeal the District Court's final forfeiture order, which vested title of the Venus Account to the United States and defaulted any right, title, or interest claimed by all other persons. *See* 14-mc-1222, ECF 36; JA 24-235. There is no further need for a U.S. court to assess who is entitled to the funds.

*United States v. High Technology Products, Inc.* 497 F.3d 637 (6th Cir. 2007), on which the Liquidators rely, App. Br. at 27-28, is inapposite. *High Technology*

---

[4] If a § 2467 case fails or is abandoned, the foreign forfeiture judgment will not be enforced, and no domestic forfeiture order would restrain the assets. In such an instance, private claimants could file an action, including an interpleader action if appropriate, to clear the title.

*Products* involved neither title to the item nor a final forfeiture order nor the penal law rule. There, the interpleader defendants (Russia, Canada, and two corporations) disputed the custodial role of the United States to certain non-radioactive isotopes. *High Technology Products, Inc.* 497 F.3d at 641-644. Canada did not seek forfeiture of anything; rather "[t]he interest of Canada in the Isotopes is solely for evidence in a criminal prosecution," and "Canada has no ownership or financial interest in the Isotopes." *See* Supplemental Report and Recommendation of Special Master, *United States v. High Technology Products, Inc.,* No. 95-722365, 2005 WL 5983560, at 2 (E. D. Mich. Oct. 20, 2005). Canada never requested that the United States enforce a final forfeiture judgment, and the United States never moved to enforce a forfeiture judgment on Canada's behalf. Section 2467 was not invoked and no penal law applied. In short, *High Technology Products* was simply an interpleader action, without a companion § 2467 action, where the ownership of the subject assets was already determined on the merits. *High Technology Products, Inc.* 497 F.3d 637. In essence, it is the case that the Second Circuit envisioned might have occurred here if Brazil had not requested or the Attorney General had not pursued a § 2467 action. The case does nothing to support the Liquidators under the current facts.

The Liquidators then conclude that "nothing in § 2467 or its legislative history indicates that a foreign forfeiture judgment cannot be considered as part of an

interpleader action." *See* App. Br. at 28. This statement ignores that the Second Circuit said otherwise: the penal law rule invoked by the Liquidators and upheld by the Second Circuit barred Brazil's effort to seek the enforcement of the forfeiture judgment in the Interpleader Action. The Second Circuit specifically cited § 2467 as the exclusive "statutory exemption to the penal law rule" to "enforce the forfeiture judgments or confiscation orders of qualifying foreign nations." *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139.

The Liquidators' arguments on § 2467's legislative history are equally misplaced. The Liquidators state that they "have not and will not raise objections to the basis for the forfeiture in the Interpleader Action that could have been raised in Brazil" and contend, therefore, that the fact that "they could have intervened in the Brazilian criminal proceedings . . . is irrelevant." *See* App. Br. at 30 & n.97. That argument ignores the statute, the case law, and the legislative history of § 2467. *See* 28 U.S.C. § 2467(d)(3)(C) (requiring factual disputes be resolved in the foreign court); *In re Seizure of Approx. $12,116,153.16*, 903 F. Supp. 2d 19, 34 (D.D.C. 2012) (holding that § 2467(d)(3)(C) expressly bars challenges that could be raised in foreign court from being raised in U.S. court and denying claimant two bites at the apple); H.R. Report No. 107-250(I), at Sec. 118. It substitutes only the Liquidators' preference. The statute and the case law provide the method by which the Liquidators could make a claim on property subject to a foreign forfeiture order

16

for which enforcement has been sought under § 2467: they could make a claim in the foreign jurisdiction, or they could explain why such a claim would not be appropriately adjudicated there (asserting any of the grounds listed in § 2467(d)). The Liquidators declined to do either, despite repeated entreaties by the District Court in the enforcement action. *E.g.*, 14-mc-1222, ECF 20 (in response to the District Court's show cause order, 14-mc-1222, ECF 19, the Liquidators represented that they "do not oppose the [United States'] application to enforce the Brazilian Forfeiture Judgment."). The Liquidators, despite having participated in the Second § 2467 Action, request now to continue this case in precisely the duplicative litigation that the statute was passed to eliminate.

The Liquidators next argue, for the first time in this Court, that "any concerns over comity are minimal here." *See* App. Br. at 31; *cf.* 15-cv-116, ECF 209; JA 161-172 (proceedings below; no mention of comity). The cases they cite, however, *id.* & nn.98-101, are not germane to the issue presented in this appeal. For instance, in *United States v. All Right to & Int. In PNC Corp. Plaza Holdings LLC*, No. 20-cv-23278, 202 WL 17653218 (S.D. Fla. Sept. 28, 2022), the district court rejected the claimant's international comity argument, holding that it is not a court's role to "second-guess the executive branch's judgment as to the proper role of comity concerns when the United States has decided to go ahead with the case." *Id.* at *16.

Here, the United States honored its treaty obligations to give effect to Brazil's criminal forfeiture claim.  The United States expects the same from Brazil.  Comity is best served by following § 2467(e)'s command to enforce the foreign judgment.  "International comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation."  *See Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D. C. Cir. 2021) (internal quotation omitted).  This Court describes international comity as a "golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances."  *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 8 (D.D.C. 2013) (citation omitted).  Here, the District Court clearly based its decision on the Second Circuit's mandate rather than the international comity doctrine, 15-cv-116, ECF 219; JA 174-175, but even comity directs the courts to enforce § 2467 and the treaty requests certified by the Attorney General.  14-mc-1222, ECF 18-1.

## C.    The Second Circuit's Mandate Is the Law of the Case.

The Second Circuit's mandate upon which the District Court relied in dismissing the Interpleader Action is the law of the case.  The "law-of-the-case doctrine" refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided by that court or a higher one in earlier phases. *Crocker v. Piedmont Aviation*, 49 F.3d 735,

739 (D.C. Cir. 1995).  This includes "[w]hen there are multiple appeals taken in the course of a single piece of litigation," where the "law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court."  *Id.*; *see also Northwestern Ind. Tel. Co. v. FCC,* 872 F.2d 465, 471 (D.C. Cir. 1989).  A subsequent court should "be loathe to reconsider issues already decided in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988); internal quotation marks omitted).

The "law of the case" doctrine is particularly "powerful" in "the so-called mandate rule."  *See Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 597 (D.C. Cir. 2001); *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  The mandate rule provides that the district court's authority on remand is constrained by both "the spirit [and the] express terms" of the appellate decision. *Am. Council of Blind v. Mnuchin*, 977 F.3d 1, 5 (D.C. Cir. 2020).   And this "obligation . . . is especially compelling in long-running litigation."  *Id.*

The inescapable message of Second Circuit's decision was that Brazil's claim to the Venus Account must be decided in a case brought under § 2467 and, therefore, that litigation of the underlying claims must be made in Brazil, not in the United

19

States, let alone in this Interpleader Action. *See The Federative Republic of Brazil*, 748 F.3d 86; JA 113-140; *see also* JA 136 (as the Second Circuit recognized, the § 2467 process contemplates that anyone contesting Brazil's interests is directed to assert that claim in Brazil so long as the Brazilian courts provide due process to any claimants.) The District Court complied with the appellate mandate, and this appeal should not revisit the Second Circuit's decision.

As explained above, the Second Circuit provided for a straightforward hierarchy of claims. The District Court conformed to that hierarchy of decisions, in compliance with the mandate from the earlier appeal in this case. The District Court "construe[d] this language [the mandate] as indicating" a two-step path forward: (1) "that § 2467 provides the mechanism to address the disposition of the funds seized from the Venus Account," and (2) "that it may only proceed to determine 'whether any interpleader party is entitled to the funds seized from the Venus Account' in the event that either 'Brazil failed' to file a request for enforcement under § 2467(b)(1) or 'the Attorney General declined' to certify Brazil's application under § 2467(b)(2)." 15-cv-116 ECF 219, n.1; JA 174, n.1 (brackets omitted).

The Liquidators contend that this construction was error because "the District Court itself characterized th[at] portion of the Second Circuit opinion . . . as dicta" and dicta is not part of the law of the case. *See* App. Br. at 25. The Second Circuit's mandate, while not specifically the holding, is nonetheless binding on remand. This

language, which appeared both in the opinion's text and as numerated holding "3" in the "Conclusion," and was essential to implementing the decision.  JA 137-140.  *See Judicial Watch, Inc. v. National Energy Policy Development Group*, 219 F. Supp. 2d 20, 31-32 (D.D.C. 2002) ("Contrary to defendants' argument, these conclusions are not dicta, but are central to the D.C. Circuit's reasoning and holding.").

The Liquidators argue that the mandate does not prevent further litigation in the Interpleader Action and does nothing more than allow a substitution of parties.  *See* App. Br. at 23-26.  But that is not what the Second Circuit said.  It did not simply dismiss Brazil from the case or direct that the United States provide representation to Brazil as its surrogate.  Instead, it said that Brazil must assert its interest under § 2467 and not in an interpleader action.  *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139.  The Second Circuit well understood that the result of such litigation would be an order enforcing the foreign judgment of forfeiture—or not, *see* 28 U.S.C. § 2467(d)(1)—and not an order allowing the United States to serve as a surrogate in the Interpleader Action.  JA 139.  The mandate's language rebuts the Liquidators' argument that the Interpleader Action has vitality even after the successful conclusion of the § 2467 action.  *Id.*

Had the Second Circuit intended the Interpleader Action to persist after a successful § 2467 action, it would have said so.  The mandate could have said that

21

once the § 2467 action is concluded, the district court would determine who, among the parties to the Interpleader Action and Brazil was entitled to the Venus Account. But the logic of the mandate is clear; the Interpleader Action would resolve the claims to the funds only if the § 2467 action was not pursued or failed. *Id.*

The District Court properly understood and was obliged to follow that mandate, thereby correctly dismissing the Interpleader Action once the Second § 2467 Action was finalized. 15-cv-116, ECF 219, JA 174-175. This Circuit should be "loathe" to reconsider issues that are already decided or to re-examine a mandate that has been scrupulously obeyed. *See LaShawn A.*, 87 F.3d at 1393.

### D. The District Court Correctly Found That the Interpleader Action Is Now Moot Because the Issue Presented Is No Longer Live

The Liquidators' contention that the United States cannot seek dismissal of the Interpleader Action as a stakeholder during the "second merits stage" is erroneous. *See* App. Br. at 32-40. Once a matter is moot, the Court and the parties have no option but to dismiss the litigation because "a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992) (citations and internal quotation marks omitted). Mootness "concerns when and whether a case is live." *County of Suffolk, N.Y. v. Sebelius,* 605 F.3d, 135, 140 (2d Cir. 2010). "Specifically, under the general rule of mootness, courts' subject matter jurisdiction

ceases when an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Id.* (citations and internal quotation marks omitted).

Here, the June 2021 order vests the title of the Venus Account funds to the United States. 14-mc-1222, ECF 36; JA 234-235. Because the Interpleader Action exists only to determine title to those funds, that order "makes it impossible for the court to grant any effectual relief whatever to a prevailing party" in this case. *County of Suffolk, N.Y.,* 605 F.3d at 140. This turn of events in not uncommon in cases involving forfeiture and interpleader. *E.g.*, *Grand Manor Health Related Facility, Inc., v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406, 415-416 (S.D.N.Y. 2013) ("The Interpleader Complaint no longer presents a live controversy. The Interpleader Complaint sought the resolution of the ownership of $426,666. That issue has since been resolved."); *Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Clemente*, 2002 WL 1162901 at *1 (S.D.N.Y. May 31, 2002) ("[B]ecause all the funds have been forfeited to the government, this interpleader action is moot.").

The Liquidators are mistaken in the belief that the United States, as the interpleader plaintiff, cannot move to dismiss the Interpleader Action in the current litigation posture. *See* App. Br. at 32-40. Even if the parties did not raise the mootness issue, the court must. *See Grand Manor Health Related Facility, Inc.,* 941 F. Supp. 2d at 415 ("Although neither party argued that the Interpleader Complaint

should be dismissed as moot, mootness is an aspect of subject matter jurisdiction that the Court must raise *sua sponte.*").  The United States did nothing wrong in bringing this jurisdictional issue to the court's attention.

The Liquidators argue both that the Interpleader Action must continue and that Brazil is remiss in not participating in it.  *See* App. Br. at 37-39.  Yet the Second Circuit incontrovertibly held that Brazil could not maintain its interest in the interpleader case but was required to enforce its interest in a § 2467 action.  *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139.  *Philippines v. Pimentel*, 553 U.S. 851, 864 (2008), held in comparable circumstances that an interpleader action cannot proceed without the Republic of the Philippines, and had to be dismissed for lack of an indispensable party.  The Liquidators ask this Circuit to interpret the Second Circuit's mandate to require Brazil to participate in this Interpleader Action despite its holding that the penal law preempts it.  *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139.  That result is absurd and the argument must be rejected.

### E.    Judicial Estoppel Does Not Apply

The Liquidators argue that because "DOJ itself initiated the Interpleader Action, DOJ should have been judicially estopped from prevailing on the argument that the Interpleader Action is moot."  *See* App. Br. at 40-45.  This is not what judicial estoppel means.  Judicial estoppel applies "where a party assumes a certain

position in a legal proceeding, and succeeds in maintaining that position," to prevent that party from "thereafter, simply because *his interests have changed*, assum[ing] a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted) (emphasis added). "This rule . . . generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* It does not apply when a litigant complies with a court order after the court tells the litigant that the litigant was wrong.

The Second Circuit held that the United States had invoked the wrong procedure to accomplish the goal of enforcing the Brazilian forfeiture. *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 139. The United States' subsequent compliance with that court's mandate is not judicially estopped. Indeed, it is judicially mandated. The Liquidators' interpretation urges this Court to prohibit a party from discontinuing an action that the Second Circuit has ruled should not have been filed. This view of estoppel finds no basis in the case law.

As the Liquidators correctly noted (App. Br. at 42), the United States faced multiple competing claims to the Venus Account when it filed the instant Interpleader Action in the Southern District of New York. *See* 15-cv-116, ECF 1 at 6-9; JA 036-039. The Second Circuit held that, if Brazil seeks enforcement under

§ 2467 and the United States undertakes that litigation, the forfeiture matter will be decided in that litigation.  *See The Federative Republic of Brazil*, 748 F.3d at 97; JA 137-138.  Each of those contingencies has been met, and the District Court has decided the forfeiture matter on the merits.  15-cv-116, ECF 26, ECF 36; JA 219-223, 234-235.  The United States has not changed its position in the Interpleader Action because its interests have changed; its interest has always been to enforce the Brazilian forfeiture request.  The United States filed its motion to dismiss the Interpleader Action because the Second Circuit issued an order that said, under these circumstances, it should.  *See New Hampshire*, 532 U.S. at 755-756 (noting that judicial estoppel may be inappropriate when change in positions is occasioned by a change in facts).  This Court should affirm the District Court's dismissal of the Interpleader Action as moot not because the United States has changed its position, but because the resolution of the companion enforcement action has left nothing in this case to decide.

F.    **The District Court's Deference to the Second Circuit's Mandate and Brazil's Compliance with Its Obligations Under § 2467 Ends Otherwise Duplicative Litigation**

As noted above, the Brazilian claim to the Venus Account was first made in Brazil and in the First 2467 Action in 2005 and related back to the time that the offense was committed in 2004, when the Venus Account was established.  05-mc-40, ECF 2; JA 176.  For their part, the Liquidators' claim to the Venus Account

26

funds is premised upon a default judgment that the Liquidators obtained in the British Virgin Islands in 2010.  15-cv-116, ECF 1, at 6-7; JA 037.  As a matter of law, the Liquidators lack a right to the account in light of the relation back doctrine.  Under U.S. and Brazilian law, a subsequent transfer by the default judgment—even if it occurred—in 2010 does not affect Brazil's right to the forfeited asset.  *See United States v. White*, 779 F. Supp. 2d 984, 990-991 (D. Minn. 2011) (government's interest under the relation back doctrine vests in proceeds of the crime at the time of the offense . . . a third party cannot have an interest under § 853(n)(6)(A) in such property), *aff'd on other grounds*, 675 F.3d 1073 (8th Cir. 2012).  Accordingly, the District Court in the Southern District of New York was right on the law, 15-cv-116, ECF 92, at 11; JA 109, although the Second Circuit later determined that the parties had erred in trying to resolve the matter through interpleader.  *The Federative Republic of Brazil*, 748 F.3d at 97; JA 138-140.

Affirming the District Court's dismissal of the Interpleader Action as moot confirms each prior ruling from any court in this case: (1) the Brazilian court resolving the forfeiture, 14-mc-1222, ECF 18-2, (2) the District Court in the Southern District of New York in prioritizing the Brazilian claim above the Liquidators', 15-cv-116, ECF 92, at 11; JA 109, (3) the Second Circuit's decision requiring Brazil's forfeiture request to be resolved in a § 2467 action, JA 138-140, and (4) the District Court's decision that, once the Brazilian forfeiture claim was

resolved, the Interpleader Action was moot, simply because "'when the issues presented are no longer live.'" 15-cv-00116, ECF 219, n.1; JA 175 n.1.

## CONCLUSION

For the foregoing reasons, the District Court order dismissing the Interpleader Action as moot should be affirmed.

June 23, 2023                              Respectfully submitted,

                                          KENNETH A. POLITE
                                          Assistant Attorney General

                                          KEVIN DRISCOLL
                                          Deputy Assistant Attorney General

                                          JENNIFER WALLIS
                                          MICHAEL C. OLMSTED
                                          Criminal Division
                                          Money Laundering and
                                              Asset Recovery Section
                                          U.S. Department of Justice
                                          1400 New York Avenue, N.W.
                                          Washington, DC 20005
                                          (202) 514-1263
                                          Jennifer.Wallis@usdoj.gov
                                          Michael.Olmsted2@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6923 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced, 14-point serif typeface using Microsoft Word.


                                    /s/Jennifer Wallis
                                    Jennifer Wallis

30

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I electronically filed the foregoing Brief for the United States with the Clerk of the Court of the U.S. Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ Jennifer Wallis
Jennifer Wallis